### DARROW v. ST. GEORGE ET AL.

1. To impart an irrevocable quality to a power, in the absence of any express stipulation, and as a result of legal principle alone, there must co-exist with the power an interest in the thing or estate to be disposed of or managed under the power.
2. Sharing profits as compensation for services does not make a partnership.

*Appeal from District Court of Arapahoe County.*

THE complaint in this case avers that on September 27, 1880, and since, Darrow, the plaintiff below, was engaged in business as a real estate broker in Denver. That plaintiff and one Thomas Burke had before that purchased of one Woods lots 1 to 28, inclusive, in block 15, Gardner addition to Denver. That plaintiff had advanced $25 towards the purchase money. On that day plaintiff and defendant, Charles D. St. George, and said Thomas Burke agreed that St. George should advance the purchase money; that the premises should be conveyed to said St. George and sold for the joint account; plaintiff to use his best endeavors to find purchasers, St. George to be repaid his advance without interest, and

the net profits to be equally divided between plaintiff, defendant Charles D. St. George and Burke.   That plaintiff procured Wood to convey the lots to St. George, who paid the purchase money, $1,475, and repaid plaintiff his advances.   Afterwards St. George conveyed to Burke certain lots in said block in full of his share in the purchase and the profits of the adventure, and Burke verbally assigned to St. George and the plaintiff all his interest, etc.   That the residue were sold by plaintiff from time to time, the total profits amounting to $3,000 or thereabouts.

In January, 1881, it was agreed between plaintiff and St. George that the money advanced by him, and the profits, should be reinvested in other real estate, in the name of St. George, to be sold by plaintiff, and that all profits on the purchases should be reinvested in the same way, and the profits from all sales be equally divided.   In pursuance of this agreement, in January, 1881, they purchased from Iverson & Borgen lots 16 to 23, inclusive, in block 15, for $625, and from Boyd block 14, for $2,000, and from Sarah Ann Eppley certain other described premises in northwest quarter of section 27, township 3 south, range 68 west, for $1,000; and in March, from one Clarke, block 13, in said Garden addition, and from one Hannah lots 13, 14, 24, 25 and 26, block 9, for $225; and from Walker lots 27, 28 and 29, block 9, for $105; and in April lot 9, in block 15, and one acre in the northwest quarter of the southwest quarter of section 27 aforesaid, for $1,800.   All the purchase money of the said premises was paid out of the moneys belonging to plaintiff and said St. George.   That afterwards sales were made as follows: Lots 16 and 17, block 15, for $300; 18 for $150; 19 for $150; 22 for $150; 23 for $150; 24 for $150; lots 35 and 36, block 14, for $400; lot 20 for $250; 3 and 4 for $400; 22 and 23 for $400; and one other lot in the same block for $175; 24 and 25, block 9, for $300; 26 for $150; 27, 28 and 29 for $450; that out of the Eppley premises, forty

feet in width, through the center, was sold for $1,500; that for lots 27, 28 and 29, block 9, the parties accepted brick, and therewith and with moneys belonging to them jointly erected upon said block 13 two brick dwellings, and on block 14 two other brick dwellings. All the sales aforesaid were procured by the plaintiff, or by plaintiff and others employed by him. That a large amount of money, $5,000 or thereabouts, has been paid to said St. George, and plaintiff hath drawn and received only $900 or thereabouts, and said St. George hath applied to his own uses the sum of $2,000. For the residue of the purchase moneys of the premises sold and not paid in money the parties accepted promissory notes of the purchasers. That said St. George hath fraudulently possessed himself of the said notes, and that on or about the 5th day of August, A. D. 1881, said St. George fraudulently conveyed to his wife, the said Kate St. George, all the lots and premises so by him held in trust for himself and plaintiff (describing the same). That before and at the time of his conveyance the said Kate St. George had notice of the agreements between plaintiff and the said Charles D. St. George, before set forth, and of the equitable rights of the plaintiff in the premises. That the conveyance to her was made without the payment of any consideration whatever. Prayer that an account be taken of the partnership dealings. That said St. George be required to pay to plaintiff whatever shall appear upon such accounting to be due him (plaintiff offering to pay whatever may appear to be due from him). That a receiver be appointed to take possession, etc. That said Kate St. George be required to release and convey to plaintiff one-half part of the premises conveyed to her by the said Charles, except the lots sold by plaintiff as aforesaid, and that the moneys decreed due plaintiff be declared a lien on the remaining undivided one-half part of said premises.

Answer of Charles D. St. George: Denies the allega-

tion as to purchase from Woods. Avers that St. George purchased the lots in block 15 from Woods, as the agent and trustee of his wife, paying therefor $1,500, the money of his wife. That the purchase was made on her account and the title held by St. George for her. Plaintiff never contributed in any way to the purchase, neither did said Burke ever contribute thereto. Denies all the other allegations in the complaint in regard to the purchase of lots upon joint account.

Avers that, for the services of plaintiff about the sales of the said real estate, it was agreed he should receive for his commissions a sum equal to one-half the net proceeds of the sales made by him. That defendant has kept the plaintiff fully paid up in cash for his commissions for sales as fast as the said commissions were earned, and the whole amount paid him for the same, in cash, amounts to over $2,500, besides the four lots charged to him. "This defendant denies the other allegations of the complaint, charging fraud against defendants herein."

Answer of Kate St. George: Admits she is the wife of co-defendant. "As to the allegation of complaint that, at the time of the conveyance last mentioned in the complaint, of all the other matters set forth in the complaint this defendant had full knowledge, this defendant denies the same." Avers that she knew to the contrary. That the allegations of plaintiff's complaint touching a copartnership, etc., alleges there never was any such copartnership. That all the real estate described, etc., was purchased with her own money, and was taken by her husband in trust for defendant, and so held until she required the same to be conveyed to her. That plaintiff acted as agent in making sales thereof, and well knew that the same had been purchased with the money of this defendant, and, during the time it was so held by said Charles D. St. George, plaintiff applied to defendant to obtain her consent that said Charles D. act

as copartner with him in the purchase and sale of real estate, which she declined; and never did plaintiff in any way claim to her that he had any interest, as copartner or otherwise, in said real estate. That the commissions for sales of that part which was sold have all been paid. "And as to the allegation of complaint charging fraud against her, she denies all and singular the same."

Other facts are stated in the opinion.

Messrs. WELLS, SMITH and MACON, for appellant.

Messrs. JOHN C. STALLCUP and LUTHE and SHAFFROTH, for appellees.

ELBERT, J. It is claimed that the referee erred in holding "community of losses" to be necessary to constitute a partnership, and but for this error of law he would have found the fact of partnership. We have assumed for the purposes of this investigation that the referee erred in this finding of law, and have examined the entire evidence.

The fifth finding of fact by the referee is as follows: "One-half of all the net profits of sale, after return of the purchase price, expenses, and costs of sale, were to be divided between plaintiff and defendants. The plaintiff to make sales."

These may be regarded as the admitted facts of the case. Outside of this there is nothing but contest and contradiction.

The claim is that these admitted facts show conclusively a partnership.

The position is untenable; for while the facts are entirely consistent with a partnership relation, they are equally consistent with the relation of principal and agent. If we accept Darrow's statement of the specific terms of the agreement, it was a partnership. If we accept St. George's statement, that the agreement was "to give him [Darrow] half of all the profits, after de-

ducting expenses, he finding purchasers and selling lots, for such lots as he sold or found customers for," then the relation was that of principal and agent. Sharing profits as compensation for services does not make a partnership.

Concerning these contested and controlling terms of the contract, the plaintiff and defendant confront and contradict each other. St. George is corroborated by Mrs. St. George, who testifies to the same terms of agency and compensation. Darrow is corroborated by Burke to the extent that he testifies in general terms that they were partners. Outside of these four, none of the witnesses sustain any relation to the subject-matter of the suit that required them to know the specific terms of the agreement, nor do they pretend to know them. Darrow's witnesses testify to numerous occasions on which St. George spoke of Darrow as his partner, and St. George's witnesses testify to numerous occasions on which Darrow spoke of St. George as the owner of the lots in question and of himself as agent. The manner of paying commissions does not throw much light on the subject. They would probably have been paid the same way under either theory of the case. The money came in generally in small amounts, and while settlements do not appear to have been made on each transaction at the time, payments on account of commissions were made with a promptitude and regularity consistent with the running character of the business, and occasionally Darrow appears to have been indebted to the commission account. The book entries were for commissions, not profits; and Darrow signs many papers as agent; St. George signed no paper as partner. All expenses, including advertising, making and recording deeds, furnishing abstracts, and (as testified to by the defendant) taxes were charged to Darrow. The last item is an unusual item of expense for an agent to assume. Still the commissions were large, and the evidence shows that the lots in question

sold rapidly. As a matter of fact, however, the item of taxes does not appear to have been specifically agreed upon. St. George charged them to Darrow as coming under the head of the general term expenses, which Darrow had assumed. And thus the issue on the question of partnership rests in conflict, with a preponderance of evidence, if there be any preponderance, in favor of the defendant.

It is not difficult to see that the contention touching the revocability or irrevocability of the agency must be be determined upon the same conflicting evidence. There is no fact in the case which, by operation of law, rescues it from this conflict. It is not a case where a valuable consideration has been advanced or paid for an agency, nor the case of an agency created for the security and protection of an agent, as where it is given as security for the payment of money, nor is it a case of agency "coupled with an interest" as claimed by counsel for the plaintiff.

The interest which the party to whom the power is given must have, in order to render the power irrevocable, must be an interest in the property on which the power is to be exercised, and not an interest in proceeds derived from a sale of the property. Whart. on Agency, sec. 95; *Blackstone v. Buttermore*, 53 Pa. St. 26; *Hartley and Minor's Appeal*, id. 212; *Barr v. Schroeder*, 32 Cal. 609; *Hunt v. Rousmanier's Adm'r*, 8 Wheat. 379.

In *Hartley and Minor's Appeal*, Thompson, J., says: "To impart an irrevocable quality to a power of attorney, in the absence of any express stipulation, and as a result of legal principle alone, there must co-exist with the power an interest in the thing or estate to be disposed of or managed under the power."

The referee found that there was no partnership; that "the contract was one of agency for compensation and nothing more," and upon hearing, these findings of

the referee were approved and confirmed by the court below:

We cannot say that this is manifestly against the weight of evidence. On the other hand, if it be conceded that such an agreement as is here sued upon does not come within the statute of frauds, we are of opinion that the case made by the complainant does not warrant a decree in his favor. The judgment of the court below is affirmed.

*Affirmed.*