No. 15,451.

PORTENIER v. WALSEN, EXECUTOR. BANNISTER, ET AL., INTERVENERS.

(146 P. [2d] 894)

Decided February 28, 1944.

Mr. Bernard E. Teets, Mr. Edward R. Moylan, for plaintiff in error.

Mr. John W. Shireman, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

The parties to this litigation are before us in reverse order of their positions in the trial court. As a matter of convenience they will be herein designated as plaintiff and defendant, as they there appeared. Those noted as interveners do not appear here.

Plaintiff, as executor of an estate to which belonged some mining claims near Idaho Springs, on November 30, 1940, granted a right of entry upon the claims "for the purpose of searching for and removing therefrom mineral bearing ore for a period of ninety days from the date hereof with the right to continue from month to month thereafter until thirty days written notice of cancellation of the license is given." The agreement throughout is mentioned as a license, and the parties are referred to as licensor and licensee. It provides, among other things, that the licensee shall pay as royalty to the licensor fifteen per cent of the net mill returns on all ore to be extracted from said premises,

and as well pay all accrued and unpaid taxes upon said premises as long as he shall remain in possession. The last paragraph of the agreement reads: "It is mutually understood and agreed that this license is granted primarily to afford party of the second part an opportunity to open and develop the property described, in order that he or others may obtain a purchaser therefor, at a price and terms to be agreed upon. The party of the first part agrees that if a sale is effected by the party of the second part, he shall receive a commission of 5% of the net purchase price."

April 15, 1943, plaintiff, as executor, mailed defendant written notice that he was terminating the license on the 17th day of May, 1943. Subsequently another notice was served by a deputy sheriff of Clear Creek County. This second notice, signed by plaintiff, was dated April 20, 1943, and ordered defendant to deliver up possession on or before May 23, 1943. It was actually served on defendant on April 22, 1943; but on May 17, 1943, plaintiff, thinking it had not been served until April 24th and that therefore the thirty day interval had not been provided, wrote defendant indicating that he would be served with a third notice terminating the license on June 21, 1943; that he was not purposely trying to annoy him with these notices, but merely endeavoring to comply with the terms of the license agreement. When plaintiff and his attorney found that the second notice had been duly served on April 22, 1943, they did nothing further about serving a third notice on defendant. Defendant took no steps to vacate the property. Plaintiff brought an action affecting real estate and asked for an injunction—which was granted —to prevent defendant from damaging the property, when it appeared that he had made statements that no one else would ever use the shaft of the mine and that he could pull out $30,000 of ore in thirty days. It also appeared that he had refused to allow engineers of plaintiff's prospective purchasers to make a survey.

After several hearings, the trial court awarded possession of the property to plaintiff. The defendant testified that during his occupancy of the property he had taken out ore of the value of about $15,000, all the proceeds of which had been expended on machinery and labor. Defendant brings the case here seeking a reversal of the judgment, and asks that it be decided on the supersedeas application. We have elected finally so to determine the matter.

Three points are specified for reversal: First, that the thirty day notice to vacate was not served upon defendant as provided in the agreement and that plaintiff's action was premature; second, that the agreement between the plaintiff and defendant was a power coupled with an interest and therefore irrevocable; and third, that the trial court neglected to insist that the plaintiff do equity as required by the maxim, and further failed to apply the protection of equity to the defendant.

On the first point it is urged that plaintiff's letter of May 17, 1943, operated as a waiver of any rights to dispossess obtained by any earlier notices served on defendant. We are of the opinion that the cases cited by defendant do not support his position. One case—*Arcade Inv. Co. v. Gieriet,* 99 Minn. 277, 109 N.W. 250—involves an intent to rescind the notice to vacate for the purpose of resuming under a lease agreement. The other four—*Dockrill v. Schenk,* 37 Ill. App. 44; *Reck & Riehl v. Caulfield,* 129 Ky. 695, 112 S.W. 843; *Morgan v. Powers,* 90 N.Y. 298, 31 N.Y.S. 954; *Doe lessee of Brierly v. Palmer,* 16 East 53, 104 English Reprint 1009—would appear to support the theory that the second notice in the instant case was binding. It is apparent that in the case before us plaintiff was trying to get defendant off the property, and that the only reason he wrote the letter indicating that he expected a third notice would be served, was because he was under the impression that the two previous notices

might not be in compliance with the license agreement in respect to giving the defendant the full thirty day notice. The intention of having defendant vacate the property was consistently evident in all plaintiff's communications, and no waiver can be implied therefrom. *Hall v. Beymer,* 22 Colo. App. 271, 277, 125 Pac. 561.

On the second point, we believe that the trial judge was correct in ruling that the license agreement was not coupled with an interest. *Darrow v. St. George,* 8 Colo. 592, 9 Pac. 791. It clearly does not follow the form of a prospector's permit carrying a provision that upon discovery of ore it shall ripen into a full-fledged lease. Conversely plaintiff's counsel point out that it is similar to a form of license agreement used by the federal government and its licensees operating on the public domain. By the very terms of the license agreement, defendant ran the risk of being dispossessed at any time after the first ninety days of his occupancy. The fact that the mine, by virtue of his work, has become more valuable commercially was the express incentive for the executor to allow defendant to work the property, as stated in the agreement. During that time defendant was afforded the opportunity to make what profit he could from the ores he extracted. On the face of the agreement it is clear that it was the executor's primary intention to sell the property as soon as he could obtain a purchaser, and to pay defendant five per cent of the sale price as commission in the event defendant found a purchaser.

On the third point, defendant's counsel invoke equity, and suggest that as we applied the equitable principle of strict construction against a lessor who sought forfeiture of an eight year lease by reason of a single violation by lessee of a liquor ordinance—*Murphy v. Traynor,* 110 Colo. 466, 135 P. (2d) 230, 145 A.L.R. 1059 — so here, this contract should be construed most favorably in favor of the defendant. But there is no leasehold in the instant case and, even if there were

one, no forfeiture of a leasehold is involved. The question presented is simply one of terminating a license agreement in the only manner by which, under its express terms, it could be terminated. We cannot make a new contract for the parties.

Judgment affirmed.