PETERS SHOE COMPANY v. W. O. MURRAY, ASSIGNEE.

Decided January 21, 1903.

1.—Practice on Appeal—Conclusions of Fact.

Where a case is tried by the court below without a jury, and there is no statement of facts in the record, the appellate court must look for its conclusions of fact alone to the findings of fact of the trial court.

2.—Banks—Collection of Draft.

Where a bank holding a draft for collection accepts in payment a check by the drawee against funds in the bank to his credit, and the bank having on-hand money to the amount of the check, charges the amount to the drawee, the status of the funds in the bank and the relation of the bank and drawer are the same as though the bank had received money in payment.

3.—Same—Trust Fund—Insolvency.

Where a draft was sent to a bank for collection, and it made the collection, and thereafter made an assignment for the benefit of its creditors, turning over to the assignee more cash than the amount of such collection, the drawer was not entitled to follow the funds in the hands of the assignee as a trust fund, there being no proof that the owner of the bank knew of its insolvency at the time the collection was made, and no evidence of the course of dealing between the drawer and the bank, or of any instructions given by the drawer, or of any facts such as would establish between the drawer and the bank any relation other than that of ordinary debtor and creditor.

Appeal from the County Court of Wilson. Tried below before Hon. Thomas P. Morris, Special Judge.

*L. B. Wiseman* and *B. F. Ballard,* for appellant.

*O. A. McCracken,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an appeal from a judgment against appellant in a suit in which it was sought to recover the sum of $375.20 from appellee as the assignee of A. B. Briscoe. The cause was tried by the court without the aid of a jury, and to the findings of fact alone can this court look for its conclusions of fact, there being no statement of facts in the record.

From the findings of fact it appears that on April 28, 1902, the firm of Murray, Houston & Co. were indebted to appellant in the sum of $375.20, and on that date a draft was drawn for that sum by appellant on its aforesaid debtors and was sent to A. B. Briscoe, a banker in Floresville, Texas, for collection. The cashier of the latter presented the check to the drawees on May 2, 1902, and in payment of the same Briscoe accepted the draft of the drawees on himself, and canceled the check. Murray, Houston & Co. had on deposit with Briscoe a sufficient amount to pay the check, and he charged their account with the check and drew his draft in favor of appellant on W. L. Moody & Co., of Galveston, Texas, for the $375.20 collected, and forwarded the same by mail to appellant. We find from the pleadings that appellant resided in St. Louis, Mo. On the morning of May 3, 1902, Briscoe closed his bank and ceased business and in the afternoon of the same day made an assignment, nam-

ing appellee as assignee. The draft sent by Briscoe to appellant was received ·on May 5, 1902, and on being presented to Moody & Co. payment was refused. Payment was afterwards refused by· the assignee. Briscoe was insolvent when he collected appellant's draft on Murray, Houston & Co. That at the close of business on May 2, 1902, Briscoe had in cash in his bank $702,25, and when the assignee took charge there was in actual cash $473.30. Appellant was not a depositor with Briscoe and was not credited with the amount of the draft on the books of Briscoe, the only evidence on the bank books of the transaction being an entry on the collection register and the drawing of a draft on Moody & Co. The trial judge found also that it did not appear from the evidence that appellant did not know Briscoe was insolvent, the legitimate conclusion being that it did not show anything on the subject.

The facts of this case are very similar to those in the case of Hunt v. Townsend, 26 S. W. Rep., 310, decided by this court, the material differences being that the check in that case was paid in cash, and in this was paid by a check drawn by the payor on the collecting bank, and in that a course of dealing and instructions were shown, and none were shown in this.

It is the well settled doctrine in this State as well as in a large number of the States of the Union, that in a case like the present, where a special agency is created; and the bank has no authority to hold and credit the proceeds of the draft, but is bound by the agreement to remit them immediately to its correspondent, the relation of trustee and beneficiary is created, and the money collected, or its equivalent, can be recovered from the assignee of the insolvent bank. Bank v. Weems, 69 Texas, 489.

In regard to the property which has been mingled with the property of those receiving it, the doctrine formerly prevailed that the very property misapplied must be identified in order to give a preference over creditors, but a different and more enlightened rule prevails at this time. But as stated in the Weems case, above cited, if the trustee "keeps on hand a sufficient sum to cover the amount of the trust money, we think it capable of demonstration that the trust should attach to the balance that is found to remain in his hands."

It is the contention of appellee that because Briscoe received no money from the payors of the draft, but merely shifted his liability from the payors to appellant, that the assets of the bank were not increased by the transaction, and the trust relation was not therefore established between appellant and Briscoe, and cites, as authority for the proposition, Freiberg v. Stoddard, 28 Atl. Rep., 1111, and Brewing Association v. Clayton, 56 Fed. Rep., 759. In the first case cited, in which the opinion was rendered by the Supreme Court of Pennsylvania, it was said: "If at the time of the assignment the plaintiffs' notes had been found by the assignee uncollected, he should have returned them. If a draft or bond or a specific package of money, received in payment of the notes, had been found among the assets coming into his hands, it should have been

turned over to the plaintiffs. But neither the notes, nor any security or sum of money received in payment of them, came into his hands. He holds nothing which he or the plaintiffs can identify with the notes, or trace as a payment of them."

"Formerly," said Judge Bradley, in Frelinghuysen v. Nugent, 36 Fed. Rep., 229, "the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor." The same doctrine is announced in Bank v. Insurance Co., 104 U. S., 54, and Peters v. Bain, 133 U. S., 670.

The following clear statement of the doctrine is contained in the case of Slater v. Oriental Mills, 27 Atl. Rep., 443, decided by the Supreme Court of Rhode Island: "The rule is clear that one has an equitable right to follow and reclaim his property, which has been wrongfully appropriated by another, so long as he can find the property, or its substantial equivalent if its form has been changed, upon the ground that such property, in whatever form, is impressed with a trust in favor of the owner. If the trustee has mingled it with his own, he will be deemed to have used his own rather than another's, and so to leave the remainder under the trust, and that is a sufficient identification for the owner."

It was shown that more than sufficient to pay appellant was turned over in cash to the assignee, and that was all that was required. Capital Nat. Bank v. Coldwater Nat. Bank, 69 S. W. Rep., 115; Bank v. Hummell (Colo.), 23 Pac. Rep., 986; Jones v. Kilbreth (Ohio), 31 N. E. Rep., 346; Foster v. Rincker (Wyo.), 35 Pac. Rep., 470.

We are of the opinion that the funds were collected by Briscoe on the draft as much so as though the money had been paid into his hands, but it does not follow that they were invested with the trust character. "When the funds are collected and in the collecting bank, whether or not those funds become a general deposit in the bank depends upon the course of dealing between the parties, if there has been one, or if there has been no course of dealing, and no express contract, except to collect, has been made, the funds after collection belong to the bank, and the relation of debtor and creditor exist between the bank and its depositor." Zane, Bank and Banking, sec. 133. The text is well supported by authority. Bank v. Weems, 69 Texas, 489; Bank v. Armstrong, 148 U. S., 50; Bank v. Hubbell, 117 N. Y., 384.

In this case it does not appear that any proof was made of the course of dealing between appellant and Briscoe, nor was it shown what instruc-

tions were given by appellant to Briscoe. The transaction is one merely of sending a draft to a bank for collection without any former course of dealing, or special instructions to take it out of the general rule which would raise the relation of debtor and creditor between the bank and drawer of the draft.

It is a well established rule that when a bank is hopelessly insolvent and that fact is known by its owners or officers, the acceptance of a draft for collection is such fraud as will entitle the owner of the proceeds to reclaim them. Railway v. Johnston, 133 U. S., 566; Bank v. Peters, 123 N. Y., 272, 125 N. E. Rep., 319; Zane on Banks, sec. 344; Craigie v. Hadley, 99 N. Y., 131.

There is no finding of fact, however, on the material point as to the knowledge of Briscoe of his insolvency, and this court has nothing to justify it in finding that fact. So the issue of fraud upon the part of Briscoe, raised by the pleading, is not supported by the facts and must necessarily be of no avail to appellant.

It follows that the judgment of the County Court must be affirmed.

*Affirmed.*