## TURNER v. HOT SPRINGS NATIONAL BANK.

Under Rev. Civ. Code 1903, § 2279, providing that a check drawn on a bank or banker is payable on demand, where the drawer of a check has sufficient funds on deposit subject to check, a bona fide holder of a check which has been duly presented and payment refused may maintain an action against the bank to recover the amount of the check.

HANEY, J., dissenting.

(Opinion filed November 17, 1904.)

Appeal from circuit court, Fall River county; Hon. LEVI McGEE, judge.

Action by Frank Turner against the Hot Springs National Bank, a corporation.    From a judgment for defendant, plaintiff appeals.    Reversed.

*Chauncey L. Wood* and *Frank Turner*, for appellant.

*Dudley & Eastman*, for respondent.

FULLER, J.    The only question presented by this appeal from an order sustaining a general demurrer is whether facts sufficient to constitute a cause of action are stated in the following complaint, from which the caption and demand for judgment are omitted:    "(1) That the defen ant is a national

banking corporation, organized, existing, and doing business under and by virtue of the United States banking law. (2) That prior to the 19th day of June, 1903, one G. M. Cleveland deposited in the defendant bank a sum of money in excess of the amount of the bank check hereinafter mentioned, to the credit and in the name of said Cleveland, and to be drawn out of said bank upon the checks of said Cleveland. (3) That on June 19, 1903, the said Cleveland, for valuable consideration, and in the usual course of business, drew, issued, and delivered to this plaintiff, as payee, his bank check, in writing, signed by said Cleveland, and addressed and directed to the said defendant bank, ordering and directing the defendant bank to pay to this plaintiff the sum of five hundred and seventy-nine dollars and forty cents ($579.40). (4) That on the 25th day of June, 1903, during business hours, and while a sum of money in excess of said sum of five hundred and seventy-nine dollars and forty cents ($579.40) so remained in defendant bank in the name and to the credit of said Cleveland, this plaintiff caused the said bank check to be presented to and at the defendant bank for payment, properly indorsed by this plaintiff. (5) That the defendant bank wholly refused and declined to pay the check, and that thereupon the same was duly protested as for nonpayment; that the defendant bank still refuses and declines to pay said check, and that the same has not been paid, or any part thereof. (6) That this plaintiff necessarily expended and paid the sum of three dollars and fifty cents ($3.50) for the expense of said protest no part of which has been paid by defendant. (7) That there is due and owing to plaintiff from defendant, as statutory damages for defendant's failure to pay said check and allowing the same to go to protest, the sum of eleven dollars and

fifty-eight cents (\$11.58), no part of which has been paid.   (8) That this plaintiff is still the owner and holder of said check." It being conceded by the demurrer that the drawer of the check had funds on deposit, subject to check, in excess of the amount demanded, the question is whether a bona fide holder of a check, which has been duly presented and payment refused, is entitled to maintain an action to recover from the bank the amount for which such check was written.

As section 2279 of the Revised Civil Code of 1903 expressly declares that a check drawn upon a bank or banker is payable on demand, without interest, it would be logical to hold that payment must be made by the bank on presentment of a properly drawn check by the lawful holder thereof, provided the funds deposited for that purpose are sufficient.   Consistent with safety and the systematic course of trade throughout the the civilized world, the great bulk of business is done by the use of checks drawn on funds deposited for that purpose at the solicitation of banks, and in consideration of an implied promise to promptly pay checks drawn thereon in such amounts as the depositor may order.   According to a general custom expressive of the parties' intention, and for their mutual convenience, all banks provide checks containing a blank space for the name of the person to the order of whom any check may be drawn and to whom the amount written therein lawfully belongs upon presentment.   The doctrine that presentment of a check transfers the funds to the full amount for which it is written, and constitutes an assignment thereof by the depositor to the payee named, or his order, furnishes ample protection to the bank paying such check, while its wrongful refusal to do so might greatly disturb important business transactions,

impair the credit of the drawer, or, in case of his subsequent bankruptcy, ruin an innocent checkholder, who became such upon the faith that the bank would perform its duty according to the established usages of the law merchant. In rejecting the doctrine of the early cases sustaining the view that a check is neither an assignment between the drawer and the payee nor a sufficient foundation for an action by the holder against the bank refusing payment, Mr. Morse, in his excellent treatise, writes convincingly in support of the proposition that "all advanced, clear, independent thought and reasoning sustains the right of the checkholder to sue the drawee." 2 Morse, Bk. 492 to 511, inclusive. From Munn v Burch, 25 Ill. 35, we quote at considerable length as follows: "Where a custom is so universal and of such antiquity that all men must be presumed to know it, courts will not pretend to be more ignorant than the rest of mankind, but will recognize and act upon it. Such is the custom governing checks on bankers. The general rule is that the creditor cannot divide up his demand against the debtor and require the latter to pay it in parcels. But everybody knows, and courts no less than commercial men, that an exception to this rule exists as to deposits in bank. It has been so long and so universal a custom with bankers to receive deposits from time to time, as the convenience of the depositor may require, and to allow him to draw out his funds on checks, in parcels, in such sums as he sees fit, that the mere fact of opening a deposit account with a banker implies a contract on the part of the banker to allow the depositor to withdraw his deposits in parcels. The books are full of cases where the courts have implied such a contract on the part of the banker, and for the purpose of raising such implication,

have taken notice of such custom; for it is only by force of such a custom that such a contract, which is against the general rule of law, can be implied. We advance thus far in this case upon well-trodden judicial ground, about which there is no dispute. But there is another bankers' custom, scarcely less ancient, not less universal, and as generally recognized and acted upon, and that is that the depositor may draw his check in favor of any third party, to whom, upon presentation, the banker pays the amount of the check out of the funds in his hands belonging to the depositor. Indeed, it is comparatively a rare occurance that the depositor presents his own check to the banker for payment. In a vast majority of cases the check is presented by a third party, in whose favor it has been drawn, or to whom it has been passed in the regular course of business, in payment and satisfaction of some debt or demand. In strictly commercial circles a hundred times more debts are paid with checks than with coin or currency. They are received and passed and deposited with bankers as cash, subject, of course, to be made good if not paid on presentation. When presented, these checks are paid as the property of the presenter, and not of the depositor; and not as a matter of favor to him, but as a matter of right. The custom of banks recognizes this mode of changing the title of money in their hands from one person to another. There is no custom known among banks, or any other departments of finance or commerce, more universally recognized and acted upon than this. If it is possible for any custom to create a right by entering into and forming an implied part of the contract, this would seem to be that one, for its antiquity, its universality, and, above all, its convenience, nay, its absolute necessity to meet

the wants of the vast commercial contracts of the present day. To say that the holder of a bank check has not both a legal and equitable right, after presentation of the check, to the money of the drawer in the hands of the banker, would destroy the most valuable feature of bank deposits and checks. Without it, this whole system would become worthless and destroyed. Unless the depositor can be thus accommodated, it is worth no man's while to keep a deposit account with a bank. And no man will wish to be troubled with the check of the best drawer, if he acquires no right by its presentation, and is only to receive pay upon it as a matter of favor. But we are entirely satisfied that such is not, and cannot be, the law. Well-recognized legal principles lead us inevitably to the same result which commercial convenience requires. This universal custom shows us what the contract of all the parties is. It shows us that the banker, when he receives the deposit, agrees with the depositor to pay it out, on the presentation of his checks, in such sums as those checks may call for, and to the person presenting them, and with the whole world he agrees that whoever shall become the owner of such check shall upon presentation, thereby become the owner, and entitled to receive, the amount called for by the check, provided the drawer shall at that time have the amount on deposit. Who shall object to that portion of the contract which the law raises by implication on the part of the banker to the third person—to anybody and to everybody? Surely, every sound lawyer will at once perceive a privity of contract between the banker and the holder of the check, created by the implied promise held out to the world by the banker on the one side and the receiving of the check for value and presenting it on the other. It is

a familiar principle of daily illustration that a promise made to the public that the performance of a particular act shall entitle the person performing the act to a particular right is a valid assumpsit to such person. The promise on the one hand and the performance on the other creates a privity between the parties as intimate and as obligatory as if the promise had originally been made to the particular person. We hold, then, that the check of a depositor upon his banker, delivered to another for value, transfers to that other the title to so much of the deposit as the check calls for, which may again be transferred to another by delivery; and when presented to the banker he becomes the holder of the money to the use of the owner of the check, and is bound to account to him for that amount, provided the party drawing the check has funds to that amount on deposit, subject to his check at the time it is presented.'' 'The foregoing conclusion was reached after the most studious investigation, and its correctness stands confirmed by all subsequent decisions of that court. The following carefully considered and more recent cases are to the point that the holder of a check, the payment of which has been refused, may sue the bank to recover the amount thereof: Bloom v. Winthrop State Bank, 96 N. W. 733; Fonner v. Smith, 47 N. W. 632, 11 L. R. A. 528, 28 Am. St. Rep. 510; McGrade v. German Savings Institution, 4 Mo. App. 330; Dodge v. National Exchange Bank, 20 Ohio St. 234; Roberts v. Corbin & Co. et al., 26 Iowa 315; Forharties v. State Bank, 78 Am. Dec. 468; Miliani v. Tognini, 7 Pac. 279; 2 Daniel, Neg. Ins. 1617 Consistent with all the authorities, and contrary to the view that the bank pays only as a matter of favor, it was held by this court in the very recent case of Manitoba Investment & Mort-

gage Company v. Weiss et al., 18 S. D. 459, 101 N. W. 37, that the receipt of a check as provisional payment of a note secured by mortgage operated as absolute payment and discharge of the indebtedness by reason of unwarranted delay in the presentment of such check until the funds against which it was drawn were exhausted and the drawer had become insolvent. By the act of receiving a deposit subject to check the bank accepts in advance, and promises to pay on demand, all properly drawn checks of the depositor, so long as the credit is sufficient and not previously incumbered. This promise of the bank to allow funds to be withdrawn by third persons and in parcels to suit the convenience of the depositor takes effect on a definite amount as often as a check is presented, and constitutes an assignment thereof between the drawer and holder, which the bank, by accepting the money, obligated itself to recognize. To hold otherwise would be repugnant to the universal custom of all commercial countries, and greatly impair the most important charactistic of systematized banking.

It follows that the demurrer should have been overruled, and the order appealed from is therefore reversed.

HANEY, J., dissenting.