Presiding Judge Scott
delivered the opinion of the court.
On the 4th day of January, 1908, the district court of Otero county entered an order appointing G. M. Hall receiver for the State Bank of Rocky Ford in a case entitled Henry M. Beatty as State Bank *272 Commissioner of the State of Colorado, Petitioner, v. the State Bank of Rocky Ford, respondent. It appears from the record that The State Bank of Rocky Ford transacted business until the close of banking hours on the 31st day of December, 1907, and thereafter did not open its doors again for business.
This action is upon the part of the appellee.alleging that on the 20th day of December, 1907, he delivered to The State Bank of Rocky Ford, a promissory note signed by H. W. Wyman for the principal sum of $600 due December 24th, 1907, which with interest amounted to a total sum of $622.85, that the note was left with The State Bank of Rocky Ford for collection, and by that bank forwarded to Colorado Springs, Colorado, where the same was paid and the amount thereafter transmitted to the State Bank of Rocky Ford. The petitioner prayed the court for an order that this be declared a special or trust fund in the hands of the receiver.
On the 17th day of October, 1908, and upon a hearing.of the matter, the district court adjudged that the sum of money involved was the proceeds of a note left for collection by the petitioner, and is a trust fund, and directed the receiver to paj the same to the claimant. This proceeding is an appeal from such order.
Upon the hearing the parties entered into the following stipulation of fact:
“It is stipulated between counsel that the State Bank of Rocky Ford, received for collection December 20th, 1907, a note for $600 from R. S. Beymer; that said note was sent to a Colorado Springs bank, and by it collected, and a draft of remittance made on *273 the 27th day of December, 1907, which draft was received by the State Bank of Rocky Ford on December 28th, 1907, and in turn on said date sent to The First National Bank of Pueblo, to the credit of the State Bank of Rocky Ford; that on the 31st day of December, 1907, the State Bank of Rocky Ford sent to the petitioner, Mr. Beymer, a statement of the collection of said note, advising him that they had collected the six hundred dollars, together with $22.85 interest, less sixty-three cents exchange, leaving a balance of $622.85; that on said date they placed to his credit on his bank book said amount.”
The appellee testified at the hearing that he left. the note at the bank for collection with Mr. Gooding; its president, and with directions to the president as follows:
“Q. You may state what direction you gave Mr. Gooding. A. Mr. Gooding wanted to know if I wanted to place it in as a deposit. I said no, I wanted it for myself, I wanted the collection.”
He further testified that on the 30th day of December he called on the bank and inquired of Mr. Barkley, the assistant cashier, as to whether or not they had heard from the collection and was informed that they had not. He further testified that on the afternoon of the 31st, at about three o’clock, Barkley called to him and said “we have heard from that Colorado Springs collection, what shall I do with it,” and that he replied, he wanted to save it, he wanted it for himself. Pie said that he was in a hurry, having another party in the buggy at the door of the bank waiting for him, and that he didn’t wait to get the money at that time.,
Hpon that point, Barkley testified that he called *274 to Beymer, who, was going by the window and said we have heard from that collection, but does not recall that Beymer said anything in reply; that up to that time he had made no entry of the item but just noticed they had received the collection. The appellee’s testimony is undisputed in the record.
Appellee further testifies that on the afternoon of the 31st day of December, at the time he was advised that the collection had been made, he handed his pass book to the bank, to be balanced, it being the last day of the month.
It appears from the stipulation that Beymer was given credit for the amount collected as the proceeds of the note, on the 31st day of December, as evidenced by Beymer’s pass book, received by him later and handed to the officer of the bank to be balanced at about the closing hour of the day of the 31st.
It appears also from the stipulation that the note was received by the bank for the purpose of collection; that it was collected and the proceeds in the form of a draft received by the bank on the 28th day of December. It appears further from Beymer’s testimony that there was special direction at the time the note was delivered to the bank for collection, that the proceeds were not to be deposited, and this appears to have been understood by the bank, for although the draft in payment of the collection was received by the State Bank of Rocky Ford on the 28th day, the amount was not placed to the credit of Beymer until the 31st day of December, the day that the bank closed its doors for business. Clearly then, from this stipulation and from, the testimony without apparent contradiction, the *275 bank did not receive tbe proceeds of tbe note for and as a deposit, but with special instructions to the contrary, and tbat in all respects tbe bank was acting solely as tbe agent of Beymer in tbe matter of tbe collection and was bolding tbe proceeds after collection, solely as tbe bailee of Beymer.
Much is said in appellant’s brief and the argument as to the necessity of tracing this fund into the funds of the bank, but in the light of stipulation of fact we are unable to see bow this is pertinent in this case, for it is stipulated “which draft was received by the State Bank of Rocky Ford on the 28th day of December, 1907, and in turn on said date, sent to the First National Bank of Pueblo to the credit of The State Bank of Rocky Ford.”
Clearly, in thus having tbe amount of tbe draft placed to its credit with tbe Pueblo bank, there was a co-mingling of tbis fund with those of its own.
The principle controlling this case was announced in First National Bank v. Hummel, 14 Colo., 259, where it was held that so long as trust property could b,e traced and followed it should remain subject to. the. trust, and wherever trust funds were mingled with another’s assets the whole would be treated as trust property, except in so far as the defaulting trustee might be able to distinguish bis own property from the trust estate.
In tbat case tbe court said “Is it not clear tbat Everett received the fund in a fiduciary capacity? Does it not follow tbat tbe instant it passed into bis bands a trust arose by operation of law, in favor of plaintiff in error? Did not the trust follow tbe fund when it passed to the bands of defendant in error? If it was mingled with tbe assets of tbe decedent, is *276 not the estate impressed with the same trust? Can it be possible that the fact of death increases a man’s estate by adding thereto all property which may be in his hands? Can a man, by an abuse of trust or violation of his fiduciary relations, acquire moneys for distribution among his general creditors at his decease?” It will not be contended that the rule in case of insolvency would be different.
The doctrine in that case is reiterated by the court of appeals upon a retrial of the same matter, reported in 2 Colo. App., 571. These cases were cited and approved by the supreme court in McClure v. La Plata Co., 19 Colo., 122, where the court said “It is a well settled rule that where property held in trust has been misapplied and diverted from the purpose of such trust it may be followed wherever it may be traced and subjected in its new form to the cestui que trust.” The bank will.not be permitted to take advantage of its own wrong, nor will the character of the transaction be changed by transferring the amount of the collection to its own account in the Pueblo bank, nor by wrongfully entering the amount to the credit of the appellee, and particularly as appears in this case, at a time after the bank failed and had ceased to do business as a bank.
“A bank cannot divest itself of a trust relation and assume the other at its own convenience. The transformation does not effect the depositor unless this is known by him, either by agreement or usage. ’ ’ 5 Cyc., 516.
“The rule is perfectly plain. The money of the real owner went to swell the assets of the bank. The bank knowingly mingled the fund of which it was *277 the trustee with the funds which it owned, hence the beneficiary has the right to have the whole fund impressed, with the trust in his favor.” Zane on Banking, sec. 341.
Decided May 13, A. D. 1912.
Rehearing denied July 8, A. D. 1912.
Counsel contends that there was a waiver by appellee presumably by his failure to take the funds from the bank at the particular moment when he was advised that the collection had been made, and cites many authorities upon the subject of waiver.
As we read the record we fail to find any testimony whatever that may be reasonably construed to be an intent to waive any right in this respect, or to depart in the slightest degree from the original agreement and understanding at the time the note was delivered to the bank for the purpose of collection.
“It may not be necessary to show the actual intent to waive where the conduct of the party has been such as to estop him. See Ross v. Swan, 7 Lea (Tenn.), 467. In this case, Freeman, judge, said: ‘To make out a case of abandonment or waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose, or acts 'amounting to estoppel on his part.’ ” 28 Am. & Eng. Enc., 528.
The order and judgment of the district court is affirmed.
All the judges concurring.