LAMRO STATE BANK, Appellant, v. FARMERS' STATE BANK OF WINNER et al., Respondents.

(148 N. W. 851.)

1. **Banking—General Deposit—Checking Account, Not Trust Fund—Debtor and Creditor Relation.**

   The fact that a fund in a bank, was subject to check, implies that it was a general deposit, possessed of no trust character; and the depositor is creditor and the banker debtor.

2. **Banking—Checks—Rights of Indorsee—Trust Fund—Evidence of Insolvency.**

   Where plaintiff bank cashed checks drawn upon defendant bank, prior to enactment of the Negotiable Instruments Law, and upon presenting them for payment to defendant, which was insolvent, took drafts drawn upon a foreign bank, the drafts being dishonored because defendant had no funds therein, **held**, that plaintiff is not entitled to a preference over

defendant's other general creditors, it being only a creditor occupying the same position as the payees of the checks, which relation was not changed by exchanging the checks for drafts, and hence, not having been entitled to demand payment of the checks in full from the insolvent bank, the amount of the drafts cannot be deemed a trust fund. **Held,** further, that the trial court correctly excluded evidence of defendant's insolvency, since plaintiff was not entitled to a preference in any event.

(Opinion filed October 6, 1914.)

Appeal from Circuit Court, Tripp County. Hon. WILLIAM WILLIAMSON, Judge.

Action by the Lamro State Bank against the Farmers' State Bank of Winner and the Public Examiner, plaintiff claiming a preference. From a judgment for defendant, plaintiff appeals. Affirmed.

*Doherty & Talbott,* and *W. J. Hooper,* for Appellant.

*J. L. Hannett,* for Respondent.

(2) Under point two of the opinion, Appellant cited:

Whitcomb v. Carpenter (Iowa) 10 L. R. A. (N. S.) 928; Widman v. Kellogg (N. D.) 133 N. W. 1020; Brown v. Sheldon State Bank, 117 N. W. 289.

Respondent cited:

People v. Merchants & Mechanics Bank, 78 N. Y. 269, 34 Am. Rep. 532; Peters Shoe Co. v. Murrey, 31 Tex. Civ. App. 259; Bowman v. First Nat. Bank, 43 Am. St. 870; Akin v. Jones, 42 Am. St. 921.

POLLEY, J. Plaintiff and defendant are both banking corporations, organized under the banking laws of this state, and, until the transactions complained of in this case, both were engaged in the banking business in the city of Winner. Defendant had received deposits, subject to check, from certain of its depositors. Checks issued by such depositors had been cashed by plaintiff and were held by it in the following amounts, to-wit: On the 17th day of January, 1913, $1,074.05; on the 18th day of the same month, $612.47; and on the 20th day of said month, $2,540.20. On each of said days plaintiff presented said checks to the defendant, and received in lieu thereof a draft for an equal amount on the Nebraska National Bank at Norfolk, Neb. Each of the drafts was immediately forwarded to the Norfolk bank for

payment, and payment of each was refused, because defendant had no funds on deposit in that bank with which to pay the same. On the 22d day of January, 1913, defendant bank, being insolvent, was taken over by the public examiner, who proceeded to wind up its affairs. Pursuant to call issued by the public examiner for creditors to present their claims within a given period of time, plaintiff filed the said drafts, together with proper proofs thereof, with the public examiner, and brought this action to compel the public examiner to allow and pay the amount of the drafts in full as a preferred claim against the defendant. The trial court denied plaintiff's right to a preference, and it brings the case here on appeal.

Appellant's theory that it is entitled to a preference is grounded upon the following facts: That, at the time the checks were presented, there were sufficient funds on hand with which to pay them in full, and that appellant could have had the money instead of drafts, had it so desired; that, this being the case, appellant should be considered to have drawn the cash on the checks, and then to have used the cash to purchase the drafts; that defendant bank was insolvent, to the knowledge of its officers, during all of the time involved; and that the defendant, in receiving appellant's money and issuing drafts, that it knew to be worthless, became an involuntary trustee, and held such money, freed from the claims of the general creditors, in trust for the benefit of appellant. On the other hand, respondent contends that appellant is merely a creditor of respondent and is entitled to only its pro rata share in the assets of respondent bank. In other words, that the relation of debtor and creditor existed between appellant and respondent at the time respondent's bank went into the hands of the public examiner.

On the trial, appellant, in support of its theory, undertook to show that respondent was insolvent at the time of, and prior to, the issuance of the drafts. This was objected to on the ground that it was incompetent, immaterial, and irrelevant, and not in any manner tending to impress a trust upon the funds in question. The objection was sustained, and this ruling thereon is assigned as error.

It is the contention of appellant, and it expressly so alleged in its complaint, that, at the time of the issuance of the drafts, the

relation of debtor and creditor did not exist between the appellant and respondent, and, under the theory of both parties, it is upon the answer to the question, "Did the relation of debtor and creditor exist?" that the decision of the case must rest.

[1-2] If the relation did not exist, then the funds against which the checks in question were drawn must have been impressed, at some time, with a trust. But this is nowhere shown to have taken place. The fact that such fund was subject to check implies that it was a general deposit, possessed of no trust character whatever. The result of such a deposit is to make the depositor a creditor of the bank to the extent of the deposit, and, to the same extent, the bank becomes a debtor to the depositor. McGregor v. Battle, 58 S. E. 28, 128 Ga. 577, 13 L. R. A. (N. S.) 185. The checks were issued prior to the enactment of the Negotiable Instrument Law of 1913 (Laws 1913, c. 279), and the issuance thereof against the deposit of the makers of the checks amounted to an assignment of the credit, to the extent of the face of the checks (Turner v. Hot Springs Bank, 18 S. D. 498, 101 N. W. 348, 112 Am. St. Rep. 804, 5 Ann. Cas. 937); and the payees of the checks, to that extent, became creditors of the respondent bank. When the checks were indorsed to the appellant, it became a creditor of the respondent bank, to the extent of the face of the checks; and, when appellant exchanged the checks for the drafts, it in no wise changed its relationship to the respondent. It was a creditor of the respondent bank before the issuance of the drafts, and it was a creditor after they had been issued.

When the money against which the checks were drawn was deposited, it became the property of respondent. It was not impressed with a trust of any character, and, until it had been, in some way, set aside, applied, or appropriated to some particular use, it remained a part of the general assets of the bank. No such appropriation of the fund involved in this case has been shown; and therefore it remained a part of the general fund of the respondent bank, and was applicable to the payment of the debts of all creditors alike.

It is argued by appellant that had it drawn the amount of the checks in cash, as it could have done, and then used the cash to purchase the drafts, it then would have been entitled to a preference. But the weakness of this argument is that appellant was

not entitled to the amount of the checks in cash. Under appellant's theory of the case, it must be assumed that respondent bank was insolvent at the time the checks were presented, and, this being the case, appellant was entitled to only its pro rata share with the other creditors in the assets of the respondent bank. For this reason, appellant cannot maintain that the purchase of the drafts with the checks was equivalent to cashing the checks, and then using such cash to purchase the drafts, as it will be presumed that, had this been attempted, the respondent would have refused to pay the amount of the checks in cash.

Appellant, in support of its claim of right to a preference, cites and relies upon the authority of Whitcomb v. Carpenter, 134 Iowa, 227, 111 N. W. 825, 10 L. R. A. (N. S.) 928; Widman v. Kellogg, 22 N. D. 396, 133 N. W. 1020, 39 L. R. A. (N. S.) 563; and Brown v. Sheldon, 139 Iowa, 83, 117 N. W. 289. While we believe these cases correctly state the law as applied to the facts involved, the facts are not analgous to the facts in this case, and therefore the rule applied in those cases is not applicable in this. This case falls within the rule announced in People v. Mer. & Mec. Bank, 78 N. Y. 269, 34 Am. Rep. 532. In that case the facts were practically identical with the facts in the case at bar, and, in speaking of the transaction involved, the court said:

"It is impossible out of these facts to construct an appropriation or trust which would attach to the general assets of the bank afterwards passing to a receiver, and require their application to the payment of the check in preference to all other indebtedness of the bank."

From this it follows that appellant is not entitled to a preference, even though respondent might have been insolvent at the time of the issuance of the drafts; there was no error in excluding evidence of such insolvency; and the judgment appealed from is affirmed.