ROBERT L. LEACH, State Superintendent of Banking, Receiver, Appellant, v. BATTLE CREEK SAVINGS BANK et al., Appellees.

**BANKS AND BANKING:** Insolvency—Preference—Course of Business

1 —Effect. When the *understanding and general course of dealing* between two banks are that each will cash checks drawn on the other and that the daily balance will be paid *by draft* in favor of the bank to which the balance is due, and such draft is issued and delivered, no

trust relation is created; but the relation of general debtor and creditor is created, with the result that no preference in payment may be demanded by the payee of the draft in the subsequent settlement of the affairs of the insolvent drawer.

**BILLS AND NOTES:** Drafts and Checks—Operation and Effect in re
2  **Assignment.** Principle reaffirmed that the mere issuance of a draft works no equitable assignment to the payee of the funds of the drawer in the hands of the drawee, and consequently, in case of the subsequent insolvency of the drawer, the payee is not a preferred creditor.

Headnote 1:   7 C. J. pp. 594 (Anno.), 751.   Headnote 2:   5 C. J. p. 916; 7 C. J. p. 751.

Headnote 2:   5 A. L. R. 1667; 2 R. C. L. 621.

*Appeal from Ida District Court.*—E. G. ALBERT, Judge.

DECEMBER 14, 1926.

SUPPLEMENTAL OPINION MARCH 22, 1927.

Action by intervener, to have its claim allowed and established as a preferred claim against the assets in the hands of the receiver of an insolvent bank. The trial court established the claim as a preference, and the receiver appeals. The facts appear in the opinion.—*Reversed.*

*Ben J. Gibson,* Attorney-general, and *Campbell & Campbell,* for appellant.

*Snell Brothers,* for intervener, appellee.

DE GRAFF, C. J.—This is an action by petition of intervention, commenced by the Farmers Savings Bank of Battle Creek, Iowa, against the Battle Creek Savings Bank of Battle Creek, Iowa, and Robert L. Leach, superintendent of banking of the state of Iowa, receiver, to have established a preference in the distribution of the assets in the hands of the receiver of the defendant bank, insolvent. The salient facts are as follows: On February 19, 1924, there were three banks in the town of Battle Creek, Iowa, to wit, the Farmers Savings Bank, intervener, the Battle Creek Savings Bank, defendant, and the Maple

1. BANKS AND BANKING: insolvency: preference: course of business: effect.

Valley Savings Bank. These banks cleared with each other, and, after an exchange of the respective checks drawn on the respective banks, the difference was adjusted by drafts. In the exchanging of said checks on February 19, 1924, there was a balance in favor of the Farmers Savings Bank in its clearance with the Battle Creek Savings Bank, in the sum of $4,710.56. The Battle Creek Savings Bank issued its draft for that amount on the First National Bank of Chicago, and on the same day the draft was mailed to the Continental & Commercial National Bank of Chicago, correspondent of the intervener; and, upon presentation of the draft to the First National Bank on the morning of February 20, 1924, it was protested, for the reason that the Battle Creek Savings Bank was closed.

It was stipulated and agreed between the intervener, Farmers Savings Bank, and the Battle Creek Savings Bank, and the receiver, Leach, that the method of clearance on the 19th day of February was as follows:

"At one o'clock we [Farmers Savings Bank] list our checks that we have against the other banks of the town, and there is one week we call up the Maple Valley, and one the Battle Creek Savings, and we take a list of their checks, and we call up by telephone and get the difference, and whichever one owes gives the draft, and the other gets the draft in payment of the checks; and that is about one o'clock in the afternoon that we do that. And it has always been the custom to clear that way since I [cashier of Farmers Savings] have been connected with the bank, from December 19, 1917."

It is the contention of the receiver that the relationship between the Battle Creek Savings Bank and the Farmers Savings Bank, intervener, was that of debtor and creditor, and not of principal and agent; and that the intervener, on the presentation of checks drawn on the Battle Creek Savings Bank which came into the hands of the intervener, could lawfully have demanded of the Battle Creek Savings Bank, in the matter of said clearance, the balance of $4,710.56 in cash. It is the further claim of the receiver that the Battle Creek Savings Bank did only what it was authorized to do by the intervener, in the issuance of the draft, and that, clothed with that authority, and under the direction of the intervener, it issued the draft in lieu of cash, at the instance and request of the intervener.

In the analysis of the contentions made, it must be observed that the laws of the state of Iowa provide an exclusive method for the liquidation and distribution of the assets of an insolvent state or savings bank. Section 9238 et seq., Code of 1924. This court has placed an interpretation on this statutory provision in *Leach v. Exchange State Bank*, 200 Iowa 185. It may also be observed, under the facts of the instant case, that there was a direction to pay by draft, and that there was no violation either of the law or of the instruction given to the issuing bank.

The intervener's rights must be predicated on the draft. What do the decisions have to say in this particular? In *American Exp. Co. v. Cosmopolitan Tr. Co.*, 239 Mass. 249 (132 N. E. 26), it is said:

"The draft sold is a direction to the foreign correspondent bank to pay to the holder of the draft on demand the sum of money named therein as directed. The transaction was one of purchase and sale. It was not executory, it did not establish a trust or an agency, and it was completed with the delivery of the draft. * * * [Citing cases.] The thing sold was the credit; the draft was but a means of establishing or transmitting the credit; it was the evidence of a completed transaction."

In *Legniti v. Mechanics & Metals Nat. Bank*, 230 N. Y. 415 (130 N. E. 597), we read:

"It has long been an established custom among banks and financial institutions to sell credit, usually represented by draft or check. * * * The draft is not the credit, but represents the credit, or, in other words, it is a notification to the correspondent or foreign representative to pay the money as directed. The draft is a direction to pay. It is not, itself, money or credit. It is simply used as such. The money paid the bank by the purchaser of the draft becomes the bank's money. The transaction is that of purchase and sale. No trust relationship is established."

See, also, *Beecher v. Cosmopolitan Tr. Co.*, 239 Mass. 48 (131 N. E. 338).

In *Harrison v. Wright*, 100 Ind. 515, the court had occasion to construe facts involving the purchase of bank checks, to be used for the purpose of transmitting money. The opinion reads:

"There is nothing in the case to create a superior equity in favor of the check-holders, as against the depositors and other

creditors. No fraud is charged or shown whereby the payees were induced to part with their money for the checks. . They were purchased in the usual course of business. * * * The depositors deposited their money, relying upon the credit of the bank that the amounts would be repaid to them when called for. The payees purchased the checks, relying upon the credit of the bank that the amounts paid for them would be refunded if, for any cause, the checks should not be paid by the drawees. It is a case where equality among the creditors is equity [citing authorities]."

We deem that the great weight of judicial authority is that, where a bank issues its draft, with authority, and in conformity to instructions, the relationship thereafter is that of debtor and creditor, and not of principal and agent, or of trustee and *cestui que trust*. In effect, we so held in *Danbury St. Bank v. Leach,* 201 Iowa 321. See, also, *Leach v. Battle Creek Sav. Bank (Alexander, Intervener),* 202 Iowa 875, and *Leach v. Iowa St. Sav. Bank (First Nat. Bank of Council Bluffs, Intervener),* 202 Iowa 894. See, also, *First Nat. Bank v. Farmers St. Bank,* 120 Kan. 706 (244 Pac. 1039); *Lamro St. Bank v. Farmers' St. Bank,* 34 S. D. 417 (148 N. W. 851).

The rule is quite universal that, under any agreement or understanding whereby the bank is to use the identical money collected, and substitute its own obligation in its stead, the theory of a trust does not exist. In the instant case, there is no serious controversy that the draft was issued in accordance with the instruction of the intervener. There is no claim that the drawer-bank issued the draft wrongfully.

In conclusion, one further brief comment may be made, in connection with the claim of the intervener in the case at bar. The draft in question did not constitute a *pro tanto* assignment of the funds in the possession of the First National Bank of Chicago in favor of the holder of the draft, and consequently the intervener cannot base a preference on this theory. The mere execution and delivery of a draft do not constitute, or operate as an equitable assignment of the funds in the hands of the drawee (Section 9588, Code of 1924), and therefore, in the absence of exceptional facts or circumstances, a court of equity will not recognize the holder's claim as superior to that of the

2. BILLS AND
NOTES: drafts
and checks:
operation and
effect *in re*
assignment.

receiver of the drawer, appointed after the issuance of the draft, but before its acceptance or certification by the drawee. *Leach v. Mechanics Sav. Bank*, 202 Iowa 899, with cases cited.

The application of the legal principles, as expressed herein, to the record facts results in a denial of the intervener's claim of preference. The decree entered by the trial court must be, and is,—*Reversed.*

EVANS, STEVENS, FAVILLE, VERMILION, and MORLING, JJ., concur.

ALBERT, J., not participating.

### SUPPLEMENTAL OPINION.

PER CURIAM.—On oral argument of this cause in this court, it was conceded that, if the preference was denied, the intervener was entitled to classification as a depositor, and to have its claim established as a depositor's claim. By virtue of this concession, it is so ordered.

With this modification, the petition for rehearing is overruled.