[Civil No. 3093.   Filed January 26, 1932.]

[7 Pac. (2d) 245.]

SECURITY TRUST AND SAVINGS BANK, a Corporation, of Yuma, Arizona, Appellant, v. JAMES B. BUTTON, Superintendent of Banks of the State of Arizona and Ex-officio Receiver of the YUMA VALLEY BANK, an Arizona Corporation, Insolvent, Appellee.

Mr. A. J. Eddy, for Appellant.

Mr. R. N. Campbell and Mr. H. F. Colman, for Appellee.

McALISTER, C. J.—The superior court of Yuma county denied the Security Trust and Savings Bank a preference upon a claim for $34,439.63 filed with James B. Button as superintendent of banks and *ex-officio* receiver of the Yuma Valley Bank, and it has appealed from this order.

The record discloses that the Security Trust and Savings Bank and the Yuma Valley Bank were both doing a general banking business in the city of Yuma and that on June 20, 1930, the latter closed its doors and was taken over by the state superintendent of banks for liquidation. Two days before this occurred the Yuma Valley Bank drew a draft for $29,176.02 on its Los Angeles correspondent, the Citizens' National Trust and Savings Bank, payable to the plaintiff, Security Trust and Savings Bank, and delivered it in settlement of the balance existing that day as a result of an exchange of the checks which had been drawn on one of them and were then in the hands of the other. It appears that about 10:30 that morning this exchange occurred, that is, the Security Trust and Savings Bank delivered to the Yuma Valley Bank the checks in its possession that had been drawn on the latter, amounting to $32,805.20, and received at the same time those drawn

on it then in the hands of the Yuma Valley Bank, totaling $3,627.16, and that about 4 o'clock that afternoon, the draft in payment of the difference between these totals was executed and delivered, the Yuma Valley Bank having in the meantime gone over the checks taken to it by the Security Trust and Savings Bank, marked them "paid" and debited the accounts on which they were drawn.

The following day, June 19th, a similar transaction took place, the only difference being that the balance, and consequently the draft on the same correspondent bank in payment of it, was for a smaller sum, namely, $5,263.61.

Both drafts were forwarded in due course of business to the Security Trust and Savings Bank's correspondent in Los Angeles which presented them to the drawee, Citizens' National Trust and Savings Bank, for payment, but this was refused because the Yuma Valley Bank had no funds on deposit in that bank, its account there being overdrawn. Upon receiving notice of this refusal the Security Trust and Savings Bank charged the checks back to the accounts to which they had been credited, and then presented the drafts to the superintendent of banks and demanded return of the checks or the amounts thereof but this was not granted, whereupon the Security Trust and Savings Bank, as the agent of those who had presented or sent the checks to it for credit, filed this claim for the aggregate of the two daily balances, $34,439.63, with the superintendent of banks asking that it be allowed as a preferred claim and paid out of the cash assets of the Yuma Valley Bank which exceeded the amount of the claim when the drafts were drawn and at all times since. Following a hearing the court denied the claim a preferred status but allowed it as a general claim, thus permitting the Security Trust and Savings Bank to share thereon proportionately with the general credi-

tors of the insolvent. It is this order from which the Security Trust and Savings Bank has appealed and the only question raised is whether the court was correct in making it.

Several errors are assigned but they are based principally upon one proposition and that is that by delivering to the Yuma Valley Bank for payment the checks which had been presented to the Security Trust and Savings Bank by its depositors for credit the Security Trust and Savings Bank made the Yuma Valley Bank its agent for their collection and that the effect of this was to create the relation of principal and agent between them and, therefore, to constitute the proceeds of the checks a trust fund for appellant in the hands of the Yuma Valley Bank as trustee. If delivery of these checks had the effect of creating a trust and this relationship continued throughout the transaction, the position of appellant is sound and should be sustained, but if, upon the other hand, it did not have this effect at all, or had it only until the issuance of the draft, it cannot be maintained.

The evidence discloses that the Yuma Valley Bank did not give the Security Trust and Savings Bank credit for any of the checks delivered to it either on the 18th or 19th of June and that neither of the banks carried a deposit with the other but that business of this character was transacted between them by the remittance method only, that commonly known as the reciprocal-accounts method not being in use at any time. It likewise appears that neither currency nor coin was ever used to satisfy such balances between them but that instead the draft of the bank against which the balance existed was made to serve this purpose. Hence, when appellant delivered the checks to the Yuma Valley Bank on the 18th and 19th of June by messenger and left them there without receiving credit for them it did so

with the understanding, resulting from long usage, that that bank later that day, after it had gone over them and charged them to the accounts of their respective drawers, would deliver to appellant its draft in payment of them, or rather of the balance existing after they had exchanged the checks held by one against the other. And in view of this situation appellant contends that by delivering the checks to the drawee bank for payment it made that bank its agent to collect them and remit the proceeds, thus creating the relation of principal and agent, and that inasmuch as no credit for the checks was given it then or afterwards, but the custom and consequently the agreement, was that the drawee bank would pay them later that day by its draft, this relationship did not cease upon issuance of the draft but continued thereafter.

Whether the relation of principal and agent arises between the holder and the drawee bank when a check is presented or sent to the latter for payment, either over its counter or by mail with instructions to remit, the authorities are not agreed. Those taking the position that it does indulge the fiction that the owner of the check makes the drawee bank his agent to collect from itself for him the amount thereof. *Bank of Poplar Bluff* v. *Millspaugh,* 313 Mo. 412, 47 A. L. R. 754, 281 S. W. 733; *Federal Reserve Bank of St. Louis* v. *Millspaugh,* 314 Mo. 1, 282 S. W. 706; *Federal Reserve Bank of Richmond* v. *Peters,* 139 Va. 45, 42 A. L. R. 742, 123 S. E. 379; *Kesl* v. *Hanover State Bank,* 109 Kan. 776, 204 Pac. 994. Those taking the opposite view, however, base their holding upon the ground that a check is an order on a bank to pay out of the funds of the drawer to the payee or a subsequent holder the amount named therein and when presented or sent to the drawee bank it is presented or sent for payment by that bank, not for collection, because all the

authority the bank needs to pay it is contained in the check itself; in fact, it is an order from the drawer which the bank disobeys at its risk. The transaction, it is argued, is one between the holder of the check and the drawee bank, both principals, since neither acts for the other but each for himself, for in the former rests the right to receive, and upon the latter devolves the obligation to pay, the amount of the check out of the drawer's funds. *Leach* v. *Citizens' State Bank of Arthur,* 203 Iowa 782, 211 N. W. 522; *Lamro State Bank* v. *Farmers' State Bank,* 34 S. D. 417, 148 N. W. 851; *People* v. *Merchants' & Mechanics' Bank,* 78 N. Y. 269, 34 Am. Rep. 532. In this situation it is, of course, true, as pointed out in *Leach* v. *Citizens' State Bank of Arthur, supra,* that the bank's duty is in no sense the same as that which arises when a draft drawn on one of its depositors is sent to it for collection. In this instance it is the collecting agent of the holder, for it cannot pay the draft unless the drawee empowers it to do so, since a draft is not, like a check, authority from the drawee depositor to pay it. *Messenger* v. *Carroll Trust & Savings Bank,* 193 Iowa 608, 187 N. W. 545.

However, as we view it, there is no necessity to determine whether the relation of principal and agent between appellant and the Yuma Valley Bank did in fact arise when the checks were delivered to the latter for payment, because the great weight of authority, and we think the better reasoning, is that even though it did the delivery and acceptance of the draft in payment of them changed it to that of debtor and creditor. While, it is true, neither of these banks carried a deposit with the other and the Yuma Valley Bank gave appellant no credit for the checks, it is likewise true that appellant left them with the Yuma Valley Bank without taking cash or anything else in payment but with the understand-

ing that settlement would be made later that day by the Yuma Valley Bank's delivering its draft on its Los Angeles correspondent. In failing to take the proceeds of the checks in cash and accepting instead the drawee's draft appellant tacitly agreed that the drawee bank should not hold the funds separately for it but that it might use them as its own and pay appellant by its draft on its Los Angeles correspondent. An agreement that the proceeds of the checks, if charging the various depositors' accounts with these checks can be said to be a collection of them, may be mingled with those of the bank and used by it and that it may substitute for them its own obligation destroys any idea of a trust, or the relation of principal and agent, and brings into being in its stead that of debtor and creditor. Among the numerous authorities to this effect we mention the following: *United States National Bank* v. *Glanton,* 146 Ga. 786, L. R. A. 1917F 600, 92 S. E. 625; *Union National Bank* v. *Citizens' Bank,* 153 Ind. 44, 54 N. E. 97; *Peters Shoe Co.* v. *Murray,* 31 Tex. Civ. App. 259, 71 S. W. 977; *North Carolina Corporation Commission* v. *Merchant's & Farmer's Bank,* 137 N. C. 697, 2 Ann. Cas. 537, 50 S. E. 308; *Citizens' Bank* v. *Bradley,* 136 S. C. 511, 134 S. E. 510; *Shull* v. *Beasley,* 149 Okl. 106, 299 Pac. 149; *State* v. *McKinley County Bank,* 32 N. M. 147, 252 Pac. 980; *Leach* v. *Battle Creek Sav. Bank,* 203 Iowa 507, 211 N. W. 520, 212 N. W. 760; *California Packing Corp.* v. *McClintock,* 75 Mont. 72, 241 Pac. 1077; *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.,* 242 Mass. 181, 24 A. L. R. 1148, 136 N. E. 333; *First National Bank in Larned* v. *Farmers' State Bank,* 120 Kan. 706, 44 A. L. R. 1531, 244 Pac. 1039.

In Thompson on Corporations, volume 8, page 349, is found the following language:

"Any agreement or course of dealing that gives the collecting bank the liberty to use the money

collected as its own and substitute its draft or other obligation instead of remitting the money actually received, necessarily destroys all features or elements of a trust in such matters. And the sending of paper for collection with instructions to remit in a particular exchange is held to be equivalent to an agreement that the money collected may be used by the collecting bank and that its draft, or the exchange money, will be accepted instead and effectually precludes any claim that the proceeds were held in trust, in case the collecting bank failed before its draft has finally been paid. . . . In these cases and similar cases the rule is established that where the collecting bank has made its remittance by check and becomes insolvent and closes its doors before the draft or check has been paid, the sender of the claim—the holder of the bank's draft—cannot claim or enforce any preference as against other creditors of the collecting bank."

A bank in Great Falls, Montana, which had received a draft on a depositor with instructions to collect and remit by its own draft failed before its draft on a San Francisco bank in settlement was presented for payment, and the court, in *California Packing Corp.* v. *McClintock, supra,* held that the claim for the amount of the draft filed with the receiver of the insolvent bank could not be given a preferred status since the situation did not create the relation of principal and agent, or of trustee and *cestui que trust.* It said:

"When it [plaintiff corporation] directed the bank to send it a draft on the Wells-Fargo Nevada National Bank of San Francisco it was virtually an express direction not to send the identical money collected, nor to hold it separate for the plaintiff, but was equivalent to an agreement that the bank might use the money collected and pay the plaintiff by its draft on the San Francisco bank. An agreement or understanding whereby the collecting bank is to use the identical money collected and substitute its own obligation in its stead destroys all idea of a trust, and creates the relation of debtor and creditor,

instead of trustee and beneficiary. *Akin, Trustee,* v. *Jones,* 93 Tenn. 353, 42 Am. St. Rep. 921, 25 L. R. A. 523, 27 S. W. 669; *Sayles* v. *Cox, Receiver,* 95 Tenn. 579, 49 Am. St. Rep. 940, 32 L. R. A. 715, 32 S. W. 626.''

In *First National Bank in Larned* v. *Farmers' State Bank, supra,* which arose out of the refusal of the receiver of an insolvent bank to allow as a preferred claim the amount of a draft given in settlement of the daily exchange of checks drawn on each other, the court said:

''An alternating relationship of debtor and creditor existed between these litigants from day to day, and when the daily settlements were made the fact that drafts were given for whatever balances were due from one to the other created no such unusual relationship between them as that of trustee and *cestui que trust.* . . . The relationship of debtor and creditor existed between the plaintiff banks and the defendant bank when they had effected their daily clearance of each others checks (3 R. C. L. 651–655), and that relationship was not altered by the acceptance of drafts on defendants' Kansas City correspondent, unless and until those drafts were honored and paid by the drawee.''

Most of the decisions on the question, it is true, have arisen in cases in which the check or draft was forwarded for collection and remittance by one residing outside of the town in which the collecting bank was doing business, but we do not see wherein this creates any different relation between the forwarder and such bank than would arise between them if they both lived in the same community and the agreement were that the collecting bank would pay the amount collected with its own check or draft. In neither instance is the identical money collected requested in payment, but in the first the specific direction and in the second the tacit understanding is that the collecting bank may use it and substitute therefor its

own obligation to pay. It is clear that in foregoing the cash and permitting the collecting bank to mingle it with its own funds instead of remitting it, or setting it apart in a separate fund for the forwarder, the latter agrees in each instance to accept in its place the collecting bank's promise to pay it.

"We are unable to see," to use the language of the court in *Leach* v. *Citizens' State Bank of Arthur, supra*, "that the sending of the checks to the drawee bank by mail gave rise to any other or different relation than would their presentation over the counter."

Having reached the conclusion that sending the drawee's draft and its acceptance by appellant in settlement of the exchange balance between the two banks created the relation of debtor and creditor and not that of trustee and *cestui que trust*, or principal and agent, discussion of the second assignment growing out of the contention that the insolvent's assets were augmented as a result of the transaction becomes unnecessary since title to the proceeds of the checks passed to the bank and appellant's right to them thereafter rested on the same basis as did that of any other general creditor of the insolvent bank.

The record discloses that on June 18, 1930, when the draft for $29,176.02 was executed, the Yuma Valley Bank's account with the Citizens' National Trust and Savings Bank of Los Angeles to the knowledge of the former's officers was overdrawn $162,-829.75 and the following day, when the second draft was executed, $158,036.76. To draw a draft on a bank in which the drawer has neither money nor credit sufficient to pay it is unlawful and appellant assigns as error the refusal of the court to hold that such was the effect of the Yuma Valley Bank's action in this case. The fact that its account with its correspondent was overdrawn when it drew the drafts did not of itself make that act one with an intent to defraud within the meaning of section 4789,

Revised Code of 1928, entitled "Drawing Check on Insufficient Account," provided it had at the time sufficient credit for the payment of the draft, or the circumstances were such as to justify it in believing that its draft would be paid. It appears that for some time prior to the drawing of these drafts its account with its correspondent had been overdrawn—only the day before the first one was executed in a sum exceeding $100,000—and that none of its drafts had ever been dishonored. In view of this the evidence is sufficient to support the finding of the court that there was no intention on the part of the insolvent bank of defrauding appellant when it accepted the check for collection or issued the draft.

The same is true of the last assignment, namely, that the court erred in denying its claim a preferred status because the Yuma Valley Bank was to the knowledge of its officers insolvent on June 18th and 19th when it accepted the checks for collection and drew the draft for payment. It is unnecessary to say more than that the evidence on this subject was such that the finding of the court that the bank was not to the knowledge of its officers insolvent until it actually closed its doors on the morning of June 20th finds support therein, and under our unvarying rule a holding of the trial court under such circumstances will not be disturbed.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.