[Civil No. 3096. Filed September 17, 1932.]

[14 Pac. (2d) 257.]

STATE, Appellant, v. A. T. HAMMONS, Superintendent of Banks of the State of Arizona and *Ex-officio* Receiver of the Bank of Winslow, and BANK of WINSLOW, a Corporation, Appellees.

Mr. K. Berry Peterson, Attorney General, and Mr. Arthur T. LaPrade, Assistant Attorney General, for the State.

Mr. Sidney Sapp, for Appellees.

ROSS, J.—This action was brought to establish a preference in favor of the state of Arizona against the assets of the Bank of Winslow, an insolvent in the hands of the state superintendent of banks as receiver for liquidation. The claim of preference is based upon the following stipulated statement of facts:

On September 29, 1924, the First National Bank of Winslow was a state depository, and on that day the state treasurer drew his draft on it for the sum of $1,500 and deposited the draft with the Valley Bank, of Phoenix, for collection and credit. The Valley Bank forwarded the draft to the Bank of Winslow, at Winslow, for collection, with instructions to remit the proceeds to it. When the Bank of Winslow presented the draft to drawee bank, the latter paid either in money or credit. The Bank of Winslow immediately remitted to the Valley Bank its draft on the First National Bank of Albuquerque to cover this item, but before the former could present the draft to the Albuquerque bank for payment the Bank of Winslow had suspended business. The draft was never paid and the state is out $1,500. When the superintendent of banks took over the Bank of Winslow, its cash assets approximated $27,000 and other assets exceeded $100,000.

Upon this statement of facts the court rendered judgment disallowing preference but approving the

claim as a general credit. The state has appealed, claiming the Bank of Winslow, under the circumstances, was its agent to collect the draft from the First National Bank of Winslow and remit in cash. It claims such special agency resulted from the forwarding bank's instruction to the Bank of Winslow to remit proceeds of the draft to it and created the relationship of trustee and beneficiary, entitling the state to recover the amount from the assignee of the insolvent bank. The Attorney General cites, in support of his contention, the following cases: *First Nat. Bank of Raton* v. *Dennis,* 20 N. M. 96, 146 Pac. 948; *State* v. *McKinley County Bank,* 32 N. M. 147, 252 Pac. 980; *American Can Co.* v. *Williams,* 178 Fed. 420, 101 C. C. A. 634; *Wallace* v. *Stone,* 107 Mich. 190, 65 N. W. 113; *Hunt* v. *Townsend,* (Tex. Civ. App.) 26 S. W. 310; *Thompson* v. *Gloucester City Sav. Inst.,* (N. J. Ch.) 8 Atl. 97; *German Fire Ins. Co.* v. *Kimble,* 66 Mo. App. 370; *National Life Ins. Co.* v. *Mather,* 118 Ill. App. 491; *Plano Mfg. Co.* v. *Auld,* 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; *Hutchinson* v. *National Bank of Commerce,* 145 Ala. 196, 41 South. 143; *Hall* v. *Beymer,* 22 Colo. App. 271, 125 Pac. 561.

We do not stop to discuss or analyze these cases for the reason that the question here involved has heretofore been decided by this court.

The instructions of the forwarding bank were not specific but general; they were, in effect, to collect and remit. In such circumstances the collecting bank, it must have been known, would adopt the usual and customary method employed by banks in remitting collections. In *Murray Company* v. *Button,* 39 Ariz. 461, 7 Pac. (2d) 619, we held (quoting from *Bowman* v. *First Nat. Bank,* 9 Wash. 614, 43 Am. St. Rep. 870, 38 Pac. 211) that the courts "take judicial notice . . . that a bank, when it makes a collection for a foreign correspondent, never, unless specially directed so to do, remits the specie collected, but, in-

stead thereof, always takes the specie to its own use, and sends therefor its draft or certificate of deposit.''

In the Murray Company case, in *Continental Illinois Bank & Trust Co.* v. *Button,* 39 Ariz. 465, 7 Pac. (2d) 620, and in *Security Trust & Savings Bank* v. *Button,* 39 Ariz. 406, 7 Pac. (2d) 245, we held, under facts involving.the question we have here, that:

"The relation of debtor and creditor between the collector and the forwarder comes into being upon the collection of the paper, whether it existed before or not, and continues from then on, because the understanding between the parties to such transactions is that the collecting bank will mingle the proceeds of the collection with its own funds and substitute for them its obligation in the form of a draft or cashier's check and necessarily they, the identical funds collected, shall not be forwarded or even specially set apart for the sender." (Quotation from Cont'l Ill. Bank case, *supra.*)

This ruling is decisive of the point raised by the state.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.