BENNETT v. EDDY.[1]

1. Malicious Prosecution and False Imprisonment—Probable Cause—Evidence.

In 1891 a company was formed to take charge of plaintiff's newspaper, and plaintiff was given stock in the company, and made manager of the paper, at a weekly salary. In 1896 defendants, who were stockholders in the company, had plaintiff arrested for the alleged embezzlement of the funds of the company between February, 1895, and May, 1896. Plaintiff claimed that he really owned the paper; that defendants were merely assisting to maintain it, to reflect their political convictions; and that the funds alleged to be misappropriated had been used to pay debts which had been guaranteed by defendants. *Held*, in an action for malicious prosecution and false imprisonment, that plaintiff, on the issue of probable cause, could show his transactions with defendants from the time the company was organized, and was not limited to the period during which the misappropriations were alleged to have occurred.

2. Same.

Evidence as to what was done with the company's property after certain mortgages thereon were foreclosed and plaintiff's connection with the paper had ceased, and as to attachment suits commenced against the plaintiff by one of the defendants, was irrelevant, and should have been excluded.

3. Same—Trial—Prejudicial Remarks of Court.

Where the theory of the defense in an action for malicious prosecution and false imprisonment included the claim that defendants' connection with plaintiff's arrest was on probable cause and by advice of counsel, it was prejudicial for the court to make a remark at the beginning of the trial, in the presence of the jury, that ignored this claim, and indicated that, if defendants procured plaintiff's arrest, it was conclusive of their liability.

4. Same—Damages—Lack of Employment.

The fact that the plaintiff in an action for malicious prosecution and false imprisonment remained idle after his arrest,

---

[1] Rehearing denied July 11, 1899.

during a period when many others were out of employment, cannot be ascribed to the arrest, and made an element of damages, unless there is evidence connecting it therewith.

5. SAME—EVIDENCE.

Where, in an action for malicious prosecution and false imprisonment, in which defendants deny any connection with the proceedings against plaintiff after stating the facts to the prosecutor, and upon his advice making the complaint, the plaintiff is permitted to show the circumstances attending his arrest in another State, it is error for the court to exclude the testimony of the prosecutor as to the directions given by him to the officer who made the arrest.

6. SAME—ADVICE OF PROSECUTING ATTORNEY—DISCLOSURE OF MATERIAL FACTS.

In an action for malicious prosecution and false imprisonment it appeared that, after defendants had consulted the prosecuting attorney about proceeding against plaintiff for embezzlement, an expert bookkeeper was employed to examine plaintiff's books, and report to the prosecutor. *Held*, that the bookkeeper's testimony as to what he learned and what he reported was admissible, as bearing upon the question whether all the material facts were submitted to the prosecuting attorney before the criminal case was commenced.

7. SAME.

Defendants' testimony as to what they told the prosecuting attorney was admissible for the same reason.

8. SAME.

For the same reason, the prosecutor, who was present at the trial and heard all the testimony, should have been permitted to testify whether or not any testimony had been given relating to facts known by defendants and not disclosed to him before the criminal complaint was made.

9. TRIAL—WITNESSES—CROSS-EXAMINATION—CONTROL BY COURT— ABUSE OF DISCRETION.

For the court arbitrarily to excuse a witness from further cross-examination before counsel, who shows no disposition to abuse the privilege, has had an opportunity to ask him with respect to material matters, is prejudicial error.

Per MOORE and MONTGOMERY, JJ.; GRANT, C. J., and LONG, J., concurring in the reversal.

Error to Bay; Maxwell, J. Submitted February 8 1899. Decided June 5, 1899.

Case by Edwin T. Bennett against John F. Eddy, Edgar A. Cooley, and Edwin T. Carrington for malicious prosecution and false imprisonment. From a ·judgment for plaintiff, defendants bring error. Reversed.

*C. L. Collins* and *Lyon & Pierce*, for appellants.

*Fales & Kelley*, for appellee.

MOORE, J.   In November, 1896, defendants Carrington and Eddy swore to a complaint charging plaintiff with the embezzlement of money belonging to the Tribune Publishing Company.   A warrant was issued, and by virtue thereof plaintiff was arrested.   A *nolle pros.* was afterwards entered in the case.   The plaintiff claimed that defendant Cooley acted with the defendants Eddy and Carrington, and sued all of them in an action for false imprisonment, and recovered a large judgment.   The case is brought here by writ of error.

It was the claim of defendant Cooley that he had nothing to do with the arrest and imprisonment of the plaintiff. It is the claim of all the defendants that there was probable cause for the complaint, and that it was made without malice.   It is also claimed that, before the complaint was made, a full and fair statement of all the facts possessed by them was submitted to the prosecuting attorney and the assistant prosecuting attorney, who decided it was a proper case for criminal proceedings, and that the prosecuting attorney's office had full charge of the case.

Error is assigned as to the conduct of counsel in his opening statement to the jury; as to the conduct of the judge in the trial of the cause; as to the admission and nonadmission of testimony; as to the charge of the judge, and his refusal to give certain charges offered by defendants, and his refusal to direct a verdict in favor of defendants.

Prior to August, 1891, plaintiff was the owner of the Bay City Tribune.   He was considerably in debt, and Mr. Cooley was upon some of his paper as indorser.   In

August, 1891, a corporation was formed, known as the
Tribune Publishing Company.    Directors were elected.
They were authorized by the stockholders to accept from
the plaintiff the good' will and all the business and assets
of the Bay City Tribune in full payment of the capital
stock, which was fixed at $50,000.    The defendants and
others became stockholders in the corporation.    In Janu-
ary, 1892, a loan of nearly $10,000 was obtained through
the agency of defendants and others, the payment of which
was secured by plaintiff assigning stock at 50 cents on the
dollar.    In February, 1895, an arrangement was made by
which preferred stock should be issued for one-half the
capital stock, which should be entitled to a fixed dividend
of 7 per cent. per annum.    Common stock could be sur-
rendered for preferred stock by paying in addition to the
common stock one-half the face value of the preferred
stock in money.    This stock was to be surrendered upon
certain conditions, the principal ones of which were that
the debts of the company, for which defendants and others
had become liable, were paid.    After the company was
organized, Mr. Bennett was appointed manager, and was
to have a salary of $50 a week.    The president and vice-
president were authorized to borrow $5,000, which amount
was afterwards increased to $6,000.    In February, 1896,
a committee made an examination and report of the busi-
ness of the company, and recommended that the stock-
holders guarantee a credit of $4,000 upon condition that
Mr. Bennett transfer to a trustee certain real estate and
a life-insurance policy to indemnify the stockholders
against loss.    This was done, and the credit guaranteed.
It is claimed that Mr. Bennett at this time represented the
indebtedness to be less than $4,500, when it was in fact
nearly $10,000 more than that amount.    The business de-
manded more money, and in May, 1896, three chattel
mortgages were given to a trustee to secure various debts,
—among others, those due to employés of the paper,—and
one chattel mortgage given to the First National Bank to
secure $8,000.    Shortly afterwards one of these mortgages

was foreclosed, and the connection of the plaintiff with the paper ended. The defendants examined, or caused to be examined, the books of the company, and say they came to the conclusion that between February, 1895, and May, 1896, plaintiff, as shown by the books and other evidence, had collected large sums of money belonging to the publishing company, and appropriated it to his own use.

Upon the trial of this cause the plaintiff was allowed to show the transactions relating to the first organization of the company, his relations to the shareholders and the subsequent transactions of the company, and the relations of defendants to it and the plaintiff, until his connection with the company ceased. It is the claim of defendants that this testimony should have been confined to what occurred between February, 1895, and May, 1896, the period of time during which it is alleged the embezzlement occurred. It is admitted by plaintiff that the books show, and the fact was, that he drew out of the company between February, 1895, and May, 1896, more than the amount of his salary,—$50 a week. His claim is that, though the business was nominally that of the publishing company, it was actually his, and was so understood, not only by himself and his office force, but by defendants. His claim is they were anxious to have a paper maintained which should reflect their political convictions, and were willing to aid him in maintaining such a paper; that the organization of a company was a convenient form through which to carry out their purpose; and that what occurred, including the writings in the nature of defeasances, and the conveyance of the real estate and the life-insurance policy by him, shows that the business was his, and that the stock was held as security, and was to be returned to him when the debts were paid. It is his claim that it was expected he would draw out of the business more than his weekly wages, to make payments upon the debts which had been guaranteed or indorsed by the defendants, or some of them, and that all the amounts so drawn out by him had been so applied, and some of the money paid to

the defendants, and that they understood what was done, and the method of doing it, in many of the transactions, and that he did not embezzle any of the funds belonging to the company. We think this testimony was admissible, as bearing upon the question of whether the defendants Carrington and Eddy had probable cause to believe the plaintiff guilty of embezzlement, and for making the complaint, and whether it was made by them in good faith. Probable cause involves a consideration of what the facts are, and what are the reasonable deductions from the facts. It is therefore what is denominated a "mixed question of law and fact." If the facts are not in dispute, the question is for the court. Upon the disputed facts the jury must be left to pass, but the court must determine, on the facts found, whether or not probable cause exists. Cooley, Torts (2d Ed.), 209. In this case there was a dispute between the plaintiff and defendants as to the manner in which the business was conducted, the knowledge the defendants had of the condition of the accounts, and the disposition made of the proceeds of the business, which made it necessary for the court to submit these facts to the jury.

The court allowed, over the objection of defendants, testimony to be given as to what was done with the property of the publishing company after the mortgages were foreclosed, and as to the organization of a new company. It also permitted the files to be introduced in evidence in an attachment suit commenced by Mr. Cooley against the plaintiff. This testimony did not throw any light upon the issues involved in this case, and was well calculated to prejudice the jury against the defendants. If any injustice was done the plaintiff in those proceedings, it can not be litigated in this one. The admission of this testimony was error.

One of the first things done, after the trial was entered upon, was for the plaintiff to introduce evidence in relation to the organization of the company in 1891 and 1892.

120 MICH.—20.

Objection was made to the admission of the testimony; the defendants claiming the testimony should be confined to what occurred from February, 1895, to May, 1896, when it was alleged the embezzlement occurred. The court said:

"This evidence is addressed in another direction. If the defendants procured the arrest of the plaintiff in Chicago under that warrant, by the officer, they are liable, and I will so charge the jury; and this testimony may enormously enhance the damage, it seems to me."

This was said before the testimony of the first witness for the plaintiff was completed. It anticipated and cut off the defense which defendants sought to make, and which they had a right to make if they could,—of probable cause, and that the complaint was made by the direction of the prosecuting officer after a full statement of the facts to him. This statement was prejudicial, and ought not to have been made.

The plaintiff was allowed to show he failed to get employment after his discharge, and that he had been idle nearly all the time from the time of his arrest until this suit was commenced. Objection was made because it did not appear the situation arose from any act of defendants. The judge replied, "Well, the jury may think it did," when the following occurred:

"Q. Mr. Bennett, you may state what the treatment of the public and the people that you are acquainted with was, in this city, after your arrest. (Objected to by defendants, unless he goes into it before the arrest as well as after.)

"The Court: He may answer. (The defendants excepted to the ruling of the court.)

"The Court: Now you may sit down. I can't be bothered so much by objections.

"A. Well, I was pointed out as an embezzler. I think many people thought I was a thief. My wife was shunned in the same way. Many of the best friends I had before went by and didn't even speak to me.

"Q. You may state, Mr. Bennett, as to whether you ever had been idle before this occurrence since the time you left school, when you were a boy.

"*A.* No, sir; never lost a day."

Upon another occasion the court told counsel to sit down, and refused to allow him to state his objection to the testimony. If the defendants were liable at all, they were liable for such damage as was caused by them; but it does not follow that, because Mr. Bennett was out of work at a time when it is a matter of common knowledge that a great many people were out of work, defendants were responsible for his idleness. The treatment of the counsel was also well calculated to prejudice the cause of his client before the jury.

Mr. Bennett was a witness on his own behalf. Counsel for the defendants sought to cross-examine him in relation to an account which he claimed contained the items, or some of the items, showing his relations with the company. The court, upon his own motion, told him he need not answer, and afterwards arbitrarily excused him from further cross-examination, when counsel had not completed the cross-examination. A good deal of discretion should be allowed to the trial judge in directing the course of the trial, but it is very apparent from the record that the cross-examination was cut off by this action of the court before counsel had an opportunity to cross-examine the plaintiff in relation to matters that were material. The right to cross-examine is a valuable right, and, while the court has an undoubted right to prevent its abuse, there is no evidence here of any disposition on the part of counsel to abuse his right of cross-examination. *Chandler* v. *Allison*, 10 Mich. 460; *Thompson* v. *Richards*, 14 Mich. 172; *O'Donnell* v. *Segar*, 25 Mich. 367; *People* v. *Barker*, 60 Mich. 277 (1 Am. St. Rep. 501), and cases there cited.

While Mr. Gilbert, the prosecuting attorney, was testifying, it was sought to show what directions he had given the officer about going to Chicago and making the arrest. The court refused to allow this. We think this was error. It was the claim of defendants that they had nothing to do

with the proceedings after the complaint was made. Mr. Carrington and Mr. Eddy claimed they had no knowledge it was proposed to arrest the plaintiff in Chicago, until after his arrest was made. As testimony was allowed to be given on the part of the plaintiff as to the arrest and what was done in Chicago, it was very proper to show who caused the arrest at Chicago to be made.

The testimony shows that, after the defendants consulted the prosecuting attorney about instituting the criminal proceeding, Mr. Marshall (an expert), at the suggestion of the prosecuting attorney, was employed by defendants to examine the books, and to learn what he could about the accounts, and report to the prosecuting attorney what he found. Mr. Marshall was examined as a witness. It was sought to show what he had learned, and what he reported to the prosecuting attorney that he had learned. This testimony was excluded. It should have been admitted, as bearing upon the question of whether all the material facts had been submitted to the prosecuting attorney before the criminal case was commenced. This ruling will also apply to the refusal of the court to allow Mr. Carrington to testify what he informed the prosecuting attorney.

Mr. Collins, the assistant prosecuting attorney, was present during all the trial, and heard the testimony of the witnesses as to the knowledge possessed by the defendants of the facts connected with the business when the criminal complaint was made. He was asked to state what testimony, if any, he had heard relating to facts known by the defendants that were not detailed to him prior to the time criminal complaint was made. This testimony was excluded. The defendants claim they were protected by the advice of counsel. It was claimed on the part of plaintiff that they had not disclosed to counsel all the facts they knew. The law is that if one about to institute a criminal complaint takes advice of counsel learned in the law, and places all the facts before him, and acts upon his opinion, he will be protected, provided

the disclosure appears to have been full and fair, and not to have withheld any of the material facts. Cooley, Torts (2d Ed.), 211. Mr. Collins should have been allowed to answer the question, as bearing upon the question as to whether all the material facts had been stated to him before the complaint was made.

It is claimed that the court should have directed a verdict upon the ground that defendants were protected by the advice of counsel. In the note to Cooley, Torts (2d Ed.), 212, it is said the mere fact of getting advice is not conclusive. in favor of the defendant (citing cases), and that the advice must be honestly given, and acted upon in good faith. In this case it is claimed defendants had such knowledge of facts that they did not believe Mr. Bennett was an embezzler, and that they did not communicate all the facts they knew to counsel. We are not prepared to say there was no proof bearing upon this claim, and that the court should have directed a verdict in favor of defendants. *Harris* v. *Woodford*, 98 Mich. 147.

We do not deem it necessary to discuss the other assignments of error. They are either not well taken or are not likely to occur again.

The judgment is reversed, and a new trial granted.

MONTGOMERY, J., concurred with MOORE, J. GRANT, C. J., and LONG, J., concurred in the result. HOOKER, J., did not sit.