## CUDNEY *v.* SHERRARD.

1. APPEAL AND ERROR — REVIEW — FINDINGS OF FACT — CONCLU-SIVENESS.

   Where, in a case tried to the court, no amendments to the findings appear to have been proposed, the court will presume the findings were warranted by the evidence.

2. ADVERSE POSSESSION—EJECTMENT—FINDINGS—SUFFICIENCY TO SUPPORT JUDGMENT.

   In ejectment to recover a strip of land along a boundary, a finding that plaintiff had occupied the land for a sufficient period to acquire title by adverse possession was sufficient to support a judgment in his favor.

3. APPEAL AND ERROR—QUESTIONS CONSIDERED—RECORD.

   The court does not consider questions not raised by the record.

4. EJECTMENT—ADVERSE POSSESSION—EVIDENCE—MATERIALITY.

   Where, in an action of ejectment to recover a strip of land along the boundary between plaintiff and defendant, the undisputed evidence showed an original location of a boundary line fence by adjoining owners and an adverse occupation of the land on each side of the line down to the removal of the fence by defendants, with all the elements of adverse possession, and the only disputed question is how far defendants moved the fence, questions asked of plaintiff's predecessors in title whether they ever had any idea of claiming title to any land beyond the true boundary line were purely academic and properly refused.

Error to Shiawassee; Miner, J.   Submitted April 16, 1908.   (Docket No. 96.)   Decided June 27, 1908.

Ejectment by L. G. Cudney against William Sherrard and another.   There was judgment for plaintiff, and defendants bring error.   Affirmed.

*Walsh & Pardee* (*Rollin H. Person*, of counsel), for appellants.

*W. J. Parker* (*Watson & Chapman*, of counsel), for appellee.

BLAIR, J.   This is an action in ejectment, brought to determine the ownership as between adjoining proprietors of a strip of land described in the declaration as follows, viz. :

"A strip of land commencing at a point 40 rods east of the quarter post on the west side of section 2, in town 7 north, range 3 east, running from thence east on the quarter line 40 rods, thence 25 feet south, thence westerly to a point 42 feet south of the point of beginning, thence north to the place of beginning, and being a part of the northwest quarter of the southwest quarter of said section," etc.

The case was tried by the court without a jury, and, among others, the court made the following findings:

"So in this case back in 1880, the plaintiff owned an eighty acres of land on section 2; immediately west of him Mr. Hoenshell and his son owned an eighty, and at that time the plaintiff was living upon his, but I do not know whether the evidence shows that Mr. Hoenshell was living upon his at that time or not; if he was not living upon this eighty he was living upon a forty which was across the road.

"At that time they desired to build a fence, such a fence as a great many of the early settlers used to, and they started in to build a fence along the north end of those two eighties, and the two men united their forces together, that is, in lieu of each building a fence along his own eighty they united together and built the fence along the northern boundary, and it seems they took some pains to

ascertain where the correct location was at that time.
\* \* \*

"Now whether they got that line correct or did not get it correct I do not think it is necessary to determine in this case. Whether the line they decided upon at that time was correct, or whether the line that Mr. Lyman Mason afterwards decided upon was correct, as I look at this case, it is not necessary to determine that fact. If those people at that time built what they believed to be the boundary line between them, and others from that time entered into possession of the same and occupied it to the exclusion of all others, and cultivated it as such land is usually cultivated, and that their possession was of such a nature and anyone could determine it, or, in other words, that the possession was open, notorious and hostile, that is, they occupied it to the exclusion of others for a sufficient length of time which the statute of our State has fixed at 15 years, as I look at it, that is sufficient to entitle the plaintiff to the title to that land by reason of adverse possession. I don't think there is any dispute upon that question in the case here, that at least a part of this land was occupied by the plaintiff for at least the statutory period of time, 15 years.

"Therefore, I find as a matter of fact that the plaintiff occupied the land for the statutory period, in such a manner and in such a way that it would give him title by adverse possession. Now, the question comes up, how much of it did he occupy; whether it was the amount described in the declaration or was it the amount claimed by the defendant, and that is a much more difficult question to decide, in my opinion, than the first. \* \* \*

"So my opinion is and I so find that the northern boundary of the brush fence as originally built was a continuation of the fence that went north and along the line of Mr. Cudney's eighty. And that the eastern boundary of the line north of this forty was the same as the eastern boundary along north of Mr. Cudney's. And the same would be true as to the western boundary, being the boundary that continued along north of Mr. Hoenshell's west forty. Therefore, I find in this case that the plaintiff is entitled to the land described in his declaration."

No requests for findings of fact or law nor proposals of amendments appear in the original or printed record. Defendants filed the following exceptions, viz.:

"*First.* Defendants except to the refusal of the circuit judge to find as in their requests for findings respectively and filed herein before judgment.

"*Second.* To the findings of fact adduced from the testimony admitted against defendants' objections, and being immaterial, irrelevant and incompetent.

"*Third.* To the judgment entered as not being supported by the findings of fact."

Defendants have removed the record to this court for review upon writ of error, assigning the following errors, viz. :

"*First.* The said court erred in refusing to find, as requested by defendants in their first request, that the plaintiff nor his predecessors in title never had any idea or intention of holding any of defendants' land in question beyond the true boundary line, but that they all believed the old fence in question was on the true boundary line, and, therefore, plaintiff having no intention of claiming beyond the true boundary line, cannot recover.

"*Second.* The said court erred in refusing to find, as requested by defendants in their second request, that the court should find generally in favor of the defendants and for no cause of action.

"*Third.* The said court erred in sustaining the objection entered by plaintiff's counsel to the following question asked by defendants' counsel of the plaintiff on cross-examination: 'Did you have any purpose or idea after you took possession of this forty acres in question, of claiming title to any land beyond the true boundary line between you and Mr. Sherrard ?'  *  *  *

"*Seventh.* The court erred in arriving at the judgment entered for the plaintiff in this cause for the reason that it is not supported by the findings of fact."

The 4th, 5th, and 6th assignments are the same in substance as the 3d.

Counsel for appellants in their brief argue in support of three propositions, as follows :

(1) That the judgment was not authorized by the findings of facts, for the reason that by his declaration plaintiff—

"Made the recovery of the disputed strip to depend up-

on its being south of the quarter line; and made the judicial establishment of the quarter line a condition precedent to any recovery.

"The court however expressly declined to determine whether the quarter line was where plaintiff claimed, namely, on the line of the old brush fence, or whether it was in accordance with the new survey as claimed by defendants. Hence there was no basis for any recovery in this case."

(2) The court found plaintiff's title to the disputed strip to rest entirely upon adverse possession.

"But the record does not show any privity between the title of plaintiff and the title of the Hoenshells. When plaintiff's grantor Bruff got it, and of whom he got it, we do not know.

"And there is no authority for tacking the title of the Hoenshells to the possession of plaintiff or of Bruff; if the latter ever had possession. And without such tacking there is no continuous possession for the period of fifteen years."

(3) The court erred in excluding the questions asked by defendants' counsel of the several occupants of the land, as to the intention with which they held possession up to the brush fence.

1. As no amendments appear to have been proposed to the findings, we must assume that they were warranted by the evidence. *Becker* v. *Headsten,* 137 Mich. 478.

The court's finding amounted, in substance, to a determination that the plaintiff had occupied the land described in his declaration for a sufficient period to acquire title thereto by adverse possession. Such finding was sufficient to support the judgment.

2. This question is not raised by the record, and we, therefore, do not consider it.

3. The undisputed evidence showed, as found by the court, an original location of this boundary line fence by adjoining owners and an adverse occupation of the land on each side of the line down to the removal of the fence by defendants, with all of the elements of adverse posses-

sion, the only disputed question being how far south defendants moved the fence. Under such circumstances, the questions propounded were purely academic and were properly refused.

The judgment is affirmed.

GRANT, C. J., and MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.