JERSEY SHORE TRUST CO. v. OWOSSO SAVINGS BANK.

1. APPEAL AND ERROR—EXCEPTIONS TO FINDINGS—CIRCUIT COURT RULE—ASSIGNMENTS OF ERROR—QUESTIONS REVIEWABLE.

   In a case tried before the court without a jury, plaintiff's failure to comply with Circuit Court Rule No. 45 and 3 Comp. Laws 1915, § 12587, in the particulars that no amendments were offered to either the court's findings of fact or conclusions of law, that there are no exceptions or assignments of error claiming the facts found are not supported by evidence or are against the great weight of evidence, or that the facts do not support the judgment, narrows the subject of inquiry, in reviewing a judgment in favor of defendant, to the court's conclusions of law and rulings on admission of testimony during the trial saved by objections and exceptions.

On liability of collecting bank for taking check or draft in payment of paper held for collection, see notes in 3 L. R. A. (N. S.) 1179; 6 A. L. R. 618.

On title to check drawn on another bank which has been credited to depositor, see note in 47 L. R. A. (N. S.) 552.

2. SAME—TRIAL—EXCLUSION OF QUESTION HARMLESS ERROR.

In a case tried before the court without a jury, if a question asked a witness as to whether a draft with bill of lading attached became the property of plaintiff bank, under certain proven facts, was erroneously excluded, it was of scant materiality, in view of the fact that the court had to decide both questions of law and fact.

3. BANKS AND BANKING — PRINCIPAL AND AGENT — COLLECTING DRAFT.

Where a bank, in the usual course of business, sends to another bank for collection a draft with bill of lading attached, the receiving bank is an agent of the sending bank.

4. PRINCIPAL AND AGENT—AGENT TO COLLECT MAY NOT ACCEPT ANYTHING BUT MONEY.

An agent authorized merely to collect a demand or to receive payment of a debt cannot bind his principal by any arrangement short of an actual collection and receipt of the money.

5. BANKS AND BANKING—PRINCIPAL AND AGENT—COLLECTING DRAFT —AGENT SURRENDERING DRAFT LIABLE FOR FULL AMOUNT.

Where defendant bank accepted in payment of a draft, sent to it for collection by another bank which had an interest therein, a certified check payable to the drawer of the draft, on which the sheriff levied and collected the money, defendant was liable to its principal bank for the full amount of the draft, since it had no right to accept in payment anything but money, which it was its duty to remit in full to its principal.

6. SAME—BILLS AND NOTES—CANCELED CHECKS.

A certified check, which had been accepted by a bank as money in payment of a draft sent it for collection, had performed its mission as commercial paper, had ceased to exist as such, and was in legal effect paid and canceled, and therefore was not subject to levy by judgment creditors of the payee.

Error to Shiawassee; Collins (Joseph H.), J.    Submitted October 11, 1922.    (Docket No. 78.)    Decided July 19, 1923.

Assumpsit by the Jersey Shore Trust Company

against the Owosso Savings Bank for an unpaid balance of a certified check.    Judgment for defendant.    Plaintiff brings error.    Reversed and remanded.

*Matthews & Hicks*, for appellant.

*Pulver & Bush*, for appellee.

STEERE, J.    Plaintiff is an incorporated banking institution located and doing a banking business at Jersey Shore, Pennsylvania.    Defendant is an incorporated State bank located and doing a general banking business at Owosso, Michigan.    On May 13, 1918, the Owosso bank received by mail from the Jersey Shore Trust Company a draft for collection with bill of lading attached for $3,778.28, drawn on Launstien & Van Sice of Owosso, Michigan, by the International Consolidated Record Association of Elmira, N. Y., in favor of A. F. Wentz.    It bore the following indorsement:

"A. F. Wentz, pay to the order of any bank, banker or trust company.    First endorsement guaranteed May 13, 1918.    The Jersey Shore Trust Company, Jersey Shore, Pennsylvania—60-69.    J. W. Lovegood, Cashier."

On receipt of this draft the Owosso bank made an entry of it in its "collection register" with customary descriptive notations and notified the drawee, Launstien & Van Sice, accordingly.    An entry in the Owosso bank's collection register shows this draft was "Paid May 22, 1918."    On that date Van Sice responded to the notice for his firm and presented to W. S. Cooper, assistant cashier of the Owosso bank, two checks upon it signed by himself and made payable to "International Consolidated Record Association, or bearer."    The checks were identical in all particulars except that one was for $3,000 and the other for $778.28.    Cooper wrote across the face of

each in red ink, "May 22, 1918.    Good.    The Owosso Savings Bank, W. S. Cooper, assistant cashier," and surrendered to Van Sice the draft with bill of lading attached.

Neither of the Van Sice certified checks ever left Owosso.    Cooper testified that the smaller one (for $778.28) was "paid that same day by draft issued to the Jersey Shore Trust Company," while the larger one (for $3,000) was taken from his custody by Joseph Sproule, the sheriff of Shiawassee county, and was eventually paid "by mailing a draft for $1,684.10 to the Jersey Shore Trust Company, and the balance was paid to the sheriff, Joseph Sproule."    In further explanation he stated that on May 22, 1918, after he had handed the draft with bill of lading attached to Van Sice in exchange for his two checks the sheriff levied a writ of attachment on the larger one for $3,000 and took it away from him; that on January 15, 1919, he paid this $3,000 certified check to the sheriff, who came back on July 23, 1919, and gave him $1,684.10, saying he had been instructed by the attorney to deliver that amount back to be forwarded to the Jersey Shore Trust Company, which Cooper then did.    Asked if he received the Van Sice checks as cash when he exchanged the draft and bill of lading for them he replied, "I would naturally consider the checks as cash inasmuch as we had certified them and had the money."

The attachment suit under which the sheriff took the $3,000 Van Sice check away from Cooper was commenced in the circuit court of Shiawassee county, Mich., by Launstien & Van Sice against the International Consolidated Record Association.

This action was brought in October, 1918, by the Jersey Shore Trust Company to recover from the Owosso bank the unremitted balance of the draft sent it for collection the previous May.    The case was tried

before the court without a jury and findings of fact with conclusions of law thereon were filed by the court followed by a judgment in favor of defendant, entered February 20, 1920.

Counsel for plaintiff in their brief "submit as a statement of facts" the findings of the court.   Exceptions were, however, taken and error assigned against its finding that, upon receipt of the $778.28, plaintiff credited it to the record association and was holding it with other amounts aggregating $2,500 as protection in this matter, and also to facts found in the concluding paragraph of the findings.   Aside from facts already stated as to transactions at Owosso, the facts found by the court are as follows:

"The court finds from the evidence that on February 7, 1918, one Herbert A. Jones, who was the general manager, secretary and treasurer of the International Consolidated Record Association, Inc., of Elmira, New York, a corporation incorporated under the laws of the State of New York, secured from W. H. Launstien, of Owosso, Michigan, an order of 1,100 bushels of seed corn to be delivered by his company to Launstien the following April at an agreed price of $4,328.28; that as an advance upon the purchase price of said corn Launstien and Van Sice, a partner of Mr. Launstien, paid to the record association the sum of $550, which was received and kept by such association.   It further appears that the method of doing business of the said association in handling seed corn was to have the corn grown under contract, either verbally or written, with different farmers through the country, and that after inspection the corn was then transported to different mills to be prepared for the market. That under the Launstien order the corn was taken in by the Littletown Flour Mill and Elevator Company, at Littletown, Pennsylvania, to the amount of eight or nine hundred bushels of said order, and that afterwards such corn by request and instruction, or, as the testimony reads, 'at the instance of,' the record association, such amount of corn was shipped by the milling company to Mr. A. F. Wentz, a miller of Pine Creek township, Pennsylvania, whose place of

business is located near the corporation limits of Jersey Shore, who shelled the corn, cleaned it, bagged it and reloaded it in the car, after having added to the quantity, from prepared corn that he had on hand of his own, sufficient to make up the 1,100 bushels of the Launstien order, and then in accordance with the letter of advice of the record association, the corn was shipped to A. F. Wentz, who is. described as the shipping and receiving agent of the record association, to the order of the record association at Owosso, Michigan; and it further appears that the milling company at Littletown was paid by Wentz about $2,500 for the corn shipped by it to him on this order. It further appears that a copy of the bill of lading was secured by Wentz for this corn and with the letter of advice was returned to the record association, who thereupon drew a draft upon W. H. Launstien and Van Sice of Owosso, Michigan, for $3,778.28, being the balance of the purchase price of said corn, after deducting the $550 already paid to the record association; and that such draft was payable to the order of A. F. Wentz, and that the draft was then forwarded to Mr. Wentz. That Mr. Wentz indorsed the draft and bill of lading and took them to the plaintiff, who accepted the draft and placed to the credit of Mr. Wentz $3,000 available by him for checking purposes, and that this advancement was in accordance with an understanding with Mr. Wentz and Mr. Herbert A. Jones of the record association, in regard to this and other drafts handled by this bank for the record association in the course of business. And that the bank was compensated by interest on amounts advanced if there was an overdraft. It appeared from the testimony that within ten days from the time the draft was brought in to the plaintiff, the record association had from fifteen to twenty-five cars of corn shipped to it, and that they were on Mr. Wentz's siding; that the association had no money to lift these drafts for this corn and plaintiff agreed to advance reasonable amounts to the association and the balance necessary, if any, was to be furnished by Mr. Wentz, and it further appears that at that time the plaintiff had a written guaranty of Mr. Wentz, such guaranty reciting that the association being engaged in the business of shipping seed corn on draft and bill of

lading; that in consideration of any advancement made by plaintiff on account of these shipments before payment of draft, that the repayment of such money advanced by Mr. Wentz was guaranteed to him; that under this guaranty the plaintiff is looking to Mr. Wentz to make good any loss it might sustain in this matter. The plaintiff forwarded this draft to the defendant for collection and return, and on May 22, 1918, the defendant sent the plaintiff $778.28 and a copy of the writ of attachment under which the balance of $3,000 was held by the sheriff. That upon receipt of the $778.28 the plaintiff placed the same to the credit of the record association, and that at the present time this amount, as well as several other amounts to an amount of $2,500, is being held by plaintiff for protection in this matter.

"It appears further that the defendant forwarded plaintiff the further sum of $1,684.10, leaving a balance in the hands of the sheriff of $1,315.90.

"The evidence discloses that A. F. Wentz had been doing business with the Jersey Shore Trust Company and with the record association for five years and had filled the association's orders for seed corn taken by it, and that he had an agreement with the association whereby he received fifteen cents a bushel for shelling the corn and furnishing such money in addition to the advancement made by the plaintiff as would handle the corn; that he acted under the orders of the record association in shipping that and all other corn and all the corn was always consigned to the corn company, and that at the end of the season he and the record association had a settlement in full for all business done during that season.   *   *   *

"The court finds from all the evidence and the actions of all the parties, both before and after the acceptance of the draft by the plaintiff, that at the time the plaintiff received the draft, it was the intention of the record association and of Mr. Wentz and of the plaintiff that it was received for the purpose of collection only; and further that at the time of such receipt by the plaintiff the draft and the corn were the property of the record association, for whom the bank was to collect the draft, and that Mr. Wentz was the agent of such association and in all he did about the corn and draft he did at the request and

instructions of the record association, and as its sole agent."

Defendant's counsel interpose the objection that the record fails to show compliance by appellant with the requirements of Circuit Court Rule No. 45 (old rule 26) and section 12587, 3 Comp. Laws 1915, in the particulars no amendments were prepared to either the court's findings of fact or conclusions of law; that there are no exceptions or assignments of error claiming the facts found are not supported by evidence or are against the great weight of evidence, or that the facts do not support the conclusions of law thereon, or that there is no evidence to support the judgment; and therefore urge "that there is nothing before this court to consider;" citing *Becker* v. *Headsten,* 137 Mich. 478; *Cudney* v. *Sherrard,* 153 Mich. 239; *In re Hoffman's Estate,* 183 Mich. 67; *Niagara Sprayer Co.* v. *Wood,* 186 Mich. 303; *Oudersluys* v. *Carstens,* 194 Mich. 521; *Couple-Gear Freight Wheel Co.* v. *Railway Co.,* 196 Mich. 429; *Engel* v. *Tate,* 203 Mich. 679; *Messer* v. *Dornbos,* 210 Mich. 47; *Murphy* v. *Bonewell,* 218 Mich. 171.

Plaintiff's failure in that particular narrows the subject of inquiry to the court's conclusions of law and rulings on admission of testimony during the progress of the trial saved by objections and exceptions.

Four of plaintiff's assignments of error are directed against the court's conclusions of law. The remainder apply to rulings on admission of certain documentary evidence, and sustaining defendant's objections to questions by plaintiff's counsel, the answers to some of them where depositions were taken being retained for consideration by the court. The principal objection to most of those questions was that they called for opinions as to the law of the case or conclusions on ultimate mixed questions of law and fact from facts proven. Illustrative of this line of

questions the cashier of the Jersey Shore Trust Company was asked: "*Q.* What in your opinion was the relationship between the plaintiff and defendant in the matter of forwarding by plaintiff to defendant of the draft and bill of lading and the collection thereof under the law of the State of Pennsylvania?"    Under certain proven facts an officer of the International Consolidated Record Association was asked: "*Q.* Did the bill of lading and this draft then become the property of the Trust Company?"    While it would not have been improper to allow a witness with knowledge of the facts to answer this question (*Cilley* v. *Van Patten*, 68 Mich. 80), and perhaps was technical error to overrule it, ownership when challenged is always a mixed question of law and fact.    If the facts are not in dispute it becomes a question of law for the court. If the facts are disputed the question is left to the jury under proper instructions by the court upon the law (*Bennett* v. *Eddy*, 120 Mich. 300) ; but where no jury is called and the court must decide both questions of law and fact, whether or not a witness is allowed to tell him how to decide them is of scant materiality. As we view this controversy the rulings upon testimony complained of are comparatively unimportant and, however viewed, of minor significance upon the controlling question involved.

The two banks were engaged in a general banking business.    In the usual course of business the Jersey Shore bank sent to the Owosso bank for collection a draft with bill of lading attached.    Between them, for all purposes of the collection, the receiving bank was an agent and the sending bank its principal.    Under its agency the Owosso bank's authority was limited to collecting the amount of the draft and remitting the same to its principal, or returning the draft with bill of lading attached if unable to do so.    Within the scope of its agency it could, and should, have done

one or the other.    In *State Bank of Midland* v. *Byrne,* 97 Mich. 178 (21 L. R. A. 753, 37 Am. St. Rep. 332), where the State Bank of Midland forwarded a draft to the Milford State Bank which the latter charged to the account of the payor with his authority and failed before remitting to the sending bank, this court said in part:

"It is elementary doctrine that 'an agent authorized merely to collect a demand, or to receive payment of a debt, cannot bind his principal by any arrangement short of an actual collection and receipt of the money.' *Ward* v. *Evans,* 2 Lord Raymond, 928; *Ward* v. *Smith,* 7 Wall. (U. S.) 451; *Pitkin* v. *Harris,* 69 Mich. 133; *Hurley* v. *Watson,* 68 Mich. 531.    *    *    *

"The law requires payment in money, and, as already shown, nothing else answers the purpose, except by agreement with the creditor, or his agent duly authorized to accept something else.    *    *    *    The payment by check, certificate or what not is not for the convenience of the creditor, and he has no concern with the fact that it is the custom of the bank to take checks in payment."

The trial court found as a conclusion of law that defendant had a legal right to accept in payment of the draft it had received for collection checks drawn upon it by Launstien & Van Sice, certified by the drawee, as "under the circumstances" the court was of opinion "these certified checks could be used for this purpose in the place of the actual money."

While much which plaintiff claims with more or less evidential support cannot be considered for reasons stated, it does appear "under the circumstances" of defendant's acceptance of the certified checks drawn upon it to which the court refers, that they were certified by the cashier and then received by him in exchange for the draft held for collection without ever being put in circulation.    Certifying them was but an idle ceremony under such circumstances.    They were drawn on the defendant bank by a customer

ostensibly to pay a draft which it held for collection. Without any intervening third party the drawer of the checks presented them to the bank for that purpose and they were accepted.    The bank knew as well whether they were good or not before the cashier certified them as after.    For all purposes of commercial paper in that transaction, which if accepted as payment by the drawee necessarily ended the life of the checks, he might as well have whispered to himself that they were good as to write that fact upon them in red ink.    The cashier who testified to certifying the checks and then exchanged the draft with bill of lading for them said he "would naturally consider them as cash as we had certified them and had the money."    The trial court found that under the circumstances they could be so used in the place of money.    The sheriff, who was conveniently present, made his levy after they were so used and the draft with bill of lading which defendant held for collection had been surrendered in exchange for them.    They had then performed their mission as commercial paper and ceased to exist as such—were in legal effect paid and canceled; but, if not, defendant had surrendered the draft with bill of lading attached without collecting the amount it called for in violation of the terms of its agency.    The collecting bank could not play fast and loose with these checks.    The findings of the court backed by the undisputed testimony shows they were accepted as money.

It is undisputed and found as a fact by the trial court that the plaintiff bank advanced to Wentz, or gave him credit for, $3,000 on the strength of the draft which he indorsed and turned in to it.    Conceding as the court found that the bank already held the paper for collection as an agent, that agency was coupled with an interest, if not a banker's lien (*Gibbons* v. *Hecox*, 105 Mich. 513 [55 Am. St. Rep. 463]),

which we are impressed on this record entitled it to recover against the receiving bank the amount of the draft if it surrendered the same to the payor without making full collection; but in our view of the case it is unnecessary to discuss that interesting question.

The unpaid balance for which plaintiff brought this action is not in dispute.    On this record plaintiff is entitled to judgment for that amount.

The judgment is reversed and the case remanded for further proceedings in harmony with this opinion. Plaintiff will recover costs in this court.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred.    MOORE, J., did not sit.