## SHULL, Bank Com'r, et al. v. BEASLEY.

No. 20857.   Opinion Filed March 17, 1931.

Rehearing Denied May 26, 1931.

M. B. Cope, John Barry, and Tomerlin & Chandler, for plaintiffs in error.

Ames, Cochran, Ames & Monnet and H. G. Leedy, for defendant in error.

ANDREWS, J.   The defendant in error instituted an action in the district court of Oklahoma county against the plaintiffs in error to recover a judgment for $69.12 as a preferred claim against the assets of the defendant, Indianola State Bank, and recovered judgment therein for that amount. From that judgment an appeal was taken to this court.

The defendant in error will be hereinafter referred to as plaintiff, the plaintiffs in error, collectively, as defendants, and the Oklahoma City branch of the Federal Reserve Bank of Kansas City as the Federal Reserve Bank.

The facts, as disclosed by the record, are that the plaintiff was a regular depositor in the Security National Bank of Oklahoma City and carried an individual checking account in that bank.   She deposited in that bank a check drawn by another on the Indianola State Bank of Indianola, Okla., for $69.12.   In the regular course of business, the Security National Bank transmitted that check to the Federal Reserve Bank with a collection letter.   The Federal Reserve Bank sent the check with its collection letter to the Indianola State Bank.   The letter and check were received by the Indianola State Bank, and that bank stamped the check "paid" and charged the same to the account

of the drawer of the check, who had on deposit in that bank funds more than sufficient to pay the check. That bank had in its vaults cash more than the amount of the check. That bank issued its draft for the amount of the item in question and other items on the First National Bank of Oklahoma City payable to the Federal Reserve Bank, and forwarded the same to the Federal Reserve Bank. That bank received it and presented it to the First National Bank of Oklahoma City for payment.

Payment was refused for the reason that the Indianola State Bank was insolvent and had been taken charge of by the State Bank Commissioner. The draft was protested and neither the Federal Reserve Bank, the Security National Bank, nor the plaintiff received payment thereon. The Indianola State Bank had on deposit with the First National Bank of Oklahoma City, subject to its draft, more than sufficient funds to pay the draft. Neither the Federal Reserve Bank, the Security National Bank, nor the plaintiff kept any deposit or balance with either the Federal Reserve Bank or the Security National Bank. The item of $69.12 was thereafter charged to the account of the Security National Bank by the Federal Reserve Bank, and the Security National Bank charged the amount thereof to the account of the plaintiff. There is no question of delay presented by the record.

In determining the issue here presented, effect must be given to the public policy of the state of Oklahoma as established by section 1, art. 14, of the Constitution of Oklahoma, which provides that general laws shall be enacted by the Legislature, which laws "shall provide for the protection of depositors and individual stockholders." Concerning that section, this court, in State ex rel. Short v. Norman, 86 Okla. 36, 206 Pac. 522, said that it charges the Legislature with the duty of enacting general laws embodying the two central and closely related ideas made prominent therein, to wit: "* * * Second, protection of depositors and individual stockholders." Under the public policy so announced, we deem it the duty of this court to select from conflicting decisions those that tend to protect depositors in a bank rather than those intended to protect creditors of a bank.

We are not here concerned with the liability, if any, either of the Security National Bank, the Federal Reserve Bank, or the First National Bank of Oklahoma City. The issue submitted here is limited, the question, as stated by the defendant, being "* * * whether or not the agreed statement of facts was sufficient to entitle plaintiff to judgment allowing her claim as a preference." As stated by the plaintiff, the issue is whether the relationship of debtor and creditor arose between the plaintiff and the Indianola State Bank, or whether the relationship between them was that of principal and agent.

The drawer of the check had funds in his account with the Indianola State Bank more than sufficient to pay the check and that bank had cash on hand more than sufficient to pay the check at the time it was presented to that bank for payment. Had the plaintiff presented the check, she would have been entitled to the money in payment thereof, or she could have asked the bank to give her a draft on an Oklahoma City bank in settlement of the check. In either event the transaction would have been closed in so far as the issues here are concerned. If the cash had been paid for the check, there would be no question of principal and agent or debtor and creditor. If she had been given a draft in payment thereof, there would be no question of principal and agent, but there would be a relationship of debtor and creditor. The establishment of relationship of debtor and creditor would not make the defendants liable. The plaintiff must recover, if at all, by the establishment of a trust growing out of the relationship of principal and agent.

We do not think it necessary and we will not herein set forth the various conflicting rules announced by the courts of this nation. The text-book writers do not agree as to the effect of those decisions, and the decisions are hopelessly in conflict.

Where a merchant draws a "draft" on a customer and attaches a bill of lading thereto and sends it either directly or indirectly to a bank for collection or for collection and remittance, he has the title to merchandise which he has contracted to sell and it is his intention to part with the title to his merchandise only for cash to be paid to the collecting bank and remitted to him. No such situation is presented where a check is deposited by a regular depositor in the regular course of business in a bank and credit given to the depositor under an agreement that the amount of the check will be charged back to the account in case it is not collected. There the holder of the check has an order on a bank for the payment of money. The check may be good and it may not be good. The holder wants credit in his bank against which he may check. He

presents the check to his bank for credit, knowing that his bank will give him credit on its books against which he may check and that his bank will send the item through the ordinary channels for the purpose of having it presented to the bank on which it is drawn and that, if it is not paid, it will be charged back to his account by his bank. That is the situation presented by the record here.

The question of the relationship between a collecting bank and a forwarder has been before this court a number of times, but the state of facts here presented has never been before this court for consideration.

In Hall v. Sullivan, 123 Okla. 233, 253 Pac. 45, the relationship was held to be that of principal and agent. There the item was forwarded "for payment and remittance." In Kansas Flour Mills Co. v. New State Bank, 124 Okla. 185, 256 Pac. 43, the item was forwarded with a notation, "The draft is a cash item and is not to be treated as a deposit. The funds obtained through its collection are to be accounted for to us, and not to be commingled with the other funds of the collecting bank." The relationship of principal and agent was held to exist. In Thomas v. Mothersead, 128 Okla. 157, 261 Pac. 363, the item was sent "for collection and remittance" and "for payment and remittance," and the relationship of principal and agent was held to exist. In State ex rel. Mothersead v. Excello Feed Milling Co., 131 Okla. 100, 267 Pac. 833, the item was forwarded "for collection" and "remit the proceeds," and the relationship of principal and agent was held to exist. In First State Bank of Bristow v. O'Bannon, 130 Okla. 206, 266 Pac. 472, the relationship was held to be that of principal and agent. There the item was sent direct to the collecting bank with the notation thereof, "for collection and remittance." In that case this court had before it the conflicting views of the courts of other states and the various rules announced by them. It selected from those views the one to be followed by this court and applied it to the facts shown by that record. There is a respectable, and possibly a majority, line of decisions of other courts to the contrary. 7 Corpus Juris, page 616, section 282, and cases therein cited. This court followed the holding of the Supreme Court of United States in Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, and held:

"A state bank accepting for collection drafts expressly marked for collection and remittance, handles such collection as agent, and the proceeds become a trust fund in the hands of the bank, subject to be traced into the hands of the Bank Commissioner who takes over the bank as insolvent."

The want of augmentation theory, followed by some courts, was said to be too harsh and the change of relationship from that of principal and agent to that of debtor and creditor by the act or desire of the agent without the consent of the principal theory, followed by some courts, was said to be unsound, and both of those theories were rejected. The controlling factor was held to be the intention of the parties.

The holding that the intention of the parties governed was followed in First State Bank of Milburn v. Lisles, 144 Okla. 156, 289 Pac. 1105. There the item was deposited as an ordinary deposit with a deposit slip, and the depositor was credited with the amount thereof. The depositor was permitted to testify, and the testimony was not denied, that when the check was delivered to the bank he asked for the cash thereon and that the bank refused to cash the check, but asked him to leave the check for collection. The only evidence tending to refute that testimony was the deposit slip and the bank record showing credit of the amount of the check. This court held that the clear weight of the evidence was with the depositor and that the relationship of principal and agent existed, thereby sustaining the rule announced in First State Bank v. O'Bannon, supra, as to the intention of the parties governing.

The rule of the intention of the parties controlling is applied by the Supreme Court of Minnesota in Eifel v. Veigel, 211 N. W. 332, in which it was said that if the item is sent for collection and credit, the relationship is that of debtor and creditor, and if sent for collection and remittance, the relationship is that of principal and agent. The court said:

"Whether the paper was deposited for collection and credit, or for collection and remittance, may be implied, in the absence of an express agreement, from the situation and relation of the parties, from the course of dealing between them, from the nature of the transaction, or from any other circumstances which disclose whether they intended credit or remittance. Darragh Co. v. Goodman, 124 Ark. 532, 187 S. W. 673; National Bank v. State Bank, 74 Colo. 309, 221 Pac. 891; Lawrence v. Lincoln County Trust Co., 125 Me. 150, 131 Atl. 863; Jersey Shore Trust Co. v. Owosso Savings Bank, 223 Mich. 513, 194 N. W. 588, 32 A. L. R. 714; McHenry County v. Northern Trust Co., 51 N. D. 646, 200 N. W. 888; National Bank v. Sandford, 62 Mo. App. 394; First Nat. Bank v. Smith Bros. Grain Co. (Tex.

Civ. App.) 276 S. W. 951; State v. Banking Corporation, 74 Mont. 491, 241 Pac. 626."

The Court of Civil Appeals of Texas, in Mayfield Co. v. First National Bank, 287 S. W. 510, applied the intention rule and held that the crediting of the amount of the item to the account was not conclusive.

In Union National Bank v. Citizens Bank (Ind.) 54 N. E. 97, the question of intent was considered and that rule applied. It was there held that the acceptance of the draft and attempting to collect the same was an important factor to show approval of the method employed in remitting the proceeds, and that that fact alone might be considered as showing that the holder of the check "did not contemplate or intend that the remittance of the money should be made otherwise than it was."

In State v. McKinley County Bank (N. M.) 252 Pac. 980, that court followed the intention rule and held:

"Whether a bank, as to the proceeds of paper held by it for collection, is a debtor or a trustee, depends upon the agreement as to the disposition of the proceeds"

—and that:

"The payee of a draft, drawn and remitted, pursuant to instructions, in return of the proceeds of a collection, is a creditor not entitled to preference in the assets or cash resources of an insolvent bank in the hands of its receiver'."

That court said:

"We recognize none of the earmarks of a trust in the relation between the drawer and payee of a bill of exchange. So much for our theory. The practical view is that appellees, in entering into the contract with the bank, trusted its credit as other classes of customers did. They were willing to exchange their money for the bank's draft, just as another customer was willing to exchange his for a certificate of deposit. Either might have insured his safety by express agreement—the one, by stipulating that the very money collected should be remitted; the other, by making a special deposit or bailment. As a matter of convenience, and in his own interest, each waived the safeguard. We are unable, either theoretically or practically, to distinguish between them or to prefer one claim to the other. We can see no equity in favor of the appellee superior to that of one, who, having a payment to make at a distant point, paid his money into the bank and received therefor the bank's draft with which to make his remittance."

We quote from Leach v. Battle Creek Savings Bank (Iowa) 211 N. W. 520, as follows:

"We deem that the great weight of judicial authority is that where a bank issues its draft with authority and in conformity to instructions the relationship thereafter is that of debtor and creditor, and not of principal and agent or of trustee and cestui que trust. In effect, we so held in Danbury State Bank v. Leach (Iowa) 207 N. W. 336. See, also, Leach v. Battle Creek Savings Bank, Alexander, Intervener (Iowa) 211 N. W. 527, and Leach v. Iowa State Savings Bank, First Nat. Bank of Council Bluffs, Intervener (Iowa) 211 N. W. 517, decided at the present term of this court. See, also, First National Bank of Larned v. Farmers' State Bank, 120 Kan. 706, 244 Pac. 1039, 44 A. L. R. 1531; Lamro State Bank v. Farmers' State Bank, 34 S. D. 417, 148 N. W. 851.

"The rule is quite universal that any agreement or understanding whereby the bank is to use the identical money collected and substitute its own obligation in its stead, that the theory of a trust does not exist. In the instant case there is no serious controversy that the draft was issued in accordance with the instruction of the intervener. There is no claim that the drawer bank issued the draft wrongfully."

In Colorado & S. Ry. Co. v. Docking (Kan.) 257 Pac. 743, the court held:

"Where a bank receives a draft for collection and return with instructions to remit by draft on Kansas City, makes the collection the same day through a local clearing house, and immediately sends the bank sending the collection item a cashier's check covering the same, and the collecting bank fails the same day, and the check is returned to the receiver of such bank, the relation of the collecting bank to the owner of the collection item is that of debtor and creditor, and the item is not a trust fund."

The rule, as follows, was quoted:

" 'Any agreement or understanding or course of dealing whereby the bank is to use the identical moneys collected and substitute its own obligation in its stead, destroys all idea of a trust.' Akin v. Jones, 93 Tenn. 353, 27 S. W. 669, 25 L. R. A. 523, 42 Am. St. Rep. 921.

"This transaction was handled in the usual and ordinary way of making collections through banks, with the relationship of principal and agent existing until the collection was made; then the bank by its own obligation in the form of a cashier's check acknowledged itself to be indebted to the Kansas City correspondent for the benefit of the plaintiff herein, and the relation of debtor and creditor arose, which is inconsistent with the idea of the collection being a trust fund.

" 'Where a bank receives payment of a note placed with it by the owner for collection, and upon request of the owner delivers him a cashier's check for the amount, there

being then cash on hand sufficient to meet it, the position of the owner becomes that of a creditor of the bank, entitled to no preference over ordinary creditors upon the failure of the bank leaving unpaid a draft, which was given by it on presentation of the check.' Massey-Harris Harvester Co. v. First State Bank, 122 Kan. 483, Syl., 252 Pac. 247."

In Akin, Trustee, v. Jones, 93 Tenn. 353, 27 S. W. 669, the court held:

"Sending a draft to a bank for collection with instructions to remit in New York exchange is equivalent to an agreement that the money collected may be used by the collecting bank, and precludes the claim that such proceeds are held in trust, where the bank fails before it has paid the collection."

To the same effect is Sayles v. Cox, 95 Tenn. 579, 32 S. W. 626.

In California Packing Corp. v. McClintock (Mont.) 241 Pac. 1077, the remittance for the collection was by draft and the issuing bank failed before the draft was paid. The court said:

"* * * for when it directed the bank to send it a draft on the Wells-Fargo Nevada National Bank of San Francisco, it was virtually an express direction not to send the identical money collected, nor to hold it separate for the plaintiff, but was equivalent to an agreement that the bank might use the money collected and pay the plaintiff by its draft on the San Francisco bank. An agreement or understanding, whereby the collecting bank is to use the identical money collected and substitute its own obligation in its stead, destroys all idea of a trust, and creates the relation of debtor and creditor, instead of trustee and beneficiary."

In City of Douglas v. Federal Reserve Bank of Dallas, 271 U. S. 489, 70 L. Ed. 1051, the check was indorsed in blank and delivered to the First National Bank of Douglas and that bank credited the depositor's account and pass book with the amount of the check. The pass book had printed upon its face. "All out-of-town items credited subject to final payment." The check was forwarded for collection. It was collected and remittance was made by check of the collecting bank. That check was dishonored. That court, after discussing various contentions, said:

"It is not necessary to decide any of these questions here. For when paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not the agent for the depositor. Burton v. United States, 196 U. S. 283, 49 L. Ed. 482,

25 Sup. Ct. Rep. 243; Union Electric Steel Co. v. Imperial Bank (C. C. A. 3d) 286 Fed. 857; General American Tank Car Corp. v. Goree (C. C. A. 4th) 296 Fed. 32, 36; Re Ruskay (C. C. A. 2d) 5 F. (2d) 143; Scott, Cases on Trusts, p. 64, note, par. 8, pp. 66, 67."

We quote from 3 R. C. L., page 633, section 261, as follows:

"The question may be said to be simply one of the intention of the parties. If they intended that the proceeds should be remitted immediately upon receipt thereof, or if in any other way it can be shown that the parties intended that the proceeds of the check as well as the check itself should remain the property of the owner, such intention will control and the bank will not take title to the proceeds. On the other hand, where the understanding is that the bank, when the collection shall have been made, shall pass it to the general credit of the depositor, kept subject to check, such credit being authorized, it is the same as though the money had been deposited by the depositor to his credit; the title to the proceeds after being credited passes to the bank, and the relation becomes merely that of debtor and creditor. The same is true where the proceeds of the collection are to be remitted to the customer by check or draft."

Having determined that the intention of the parties must govern, we will consider the record for the purpose of determining the intention of the parties in this transaction.

The plaintiff deposited this check with a deposit slip listing the item and, at the same time, received credit on the books and records of the Security National Bank for the amount thereof. The deposit ticket shows that the deposit was "For the Credit of Corrine L. Beasley, January 17, 1927." There is no testimony in the record as there was in First State Bank of Milburn v. Lisles, supra, showing an intent that the check be deposited for collection only, and the intent of the parties must be ascertained from the written instrument. The deposit slip recited that:

"Items deposited are received for collection only, credited subject to final payment in cash, with right reserved to charge items or enter for collection. Acting only as agent for depositor, items may be forwarded through ordinary channels, but this bank assumes no responsibility for neglect, default, or failure of such agents, including failure to follow instructions to protest, nor losses in the mails. Should any collecting agent convert the proceeds, or remit in returns afterwards dishonored, credits given will be charged back although item itself may have been paid and not returnable.

When deemed best items may be sent for collection to banks on which drawn; if so sent, above conditions are neither waived nor suspended. Items on this bank not found good at close of business on day of deposit will be charged back to depositor."

The Security Bank gave her credit for the amount of the check with the agreement that it would act as her agent for the collection of the check "through ordinary channels." It specifically contracted against any responsibility for negligence, default, or failure of the agents employed through the ordinary channels, and it provided that the credit given the plaintiff at the time of the deposit might be charged back if the remittance from the item was "in returns afterwards dishonored." It cannot be said that the plaintiff intended to deposit this check in the Security National Bank for collection and remittance to her. We are of the opinion that she intended to deposit it for credit with the understanding and agreement that it should be charged back to her if it was not paid. Whether or not it was paid, there was no intent on her part that she would have the funds collected remitted to her. She was to have only the credit which she was given at the time of the deposit of the check.

The letter from the Security National Bank to the Federal Reserve Bank read, "We enclose for collection and credit." The Federal Reserve Bank, therefore, did not receive this check for collection or for collection and remittance. It received the check for collection and credit. Had the check been collected, it would not have remitted the proceeds thereof to the Security National Bank, but it would have credited the Security National Bank upon its books as directed. With this letter of authority from the Security National Bank to the Federal Reserve Bank, it cannot be said that the Federal Reserve Bank, when it collected this money, would be other than debtor to the Security National Bank.

The Indianola State Bank received this check from the Federal Reserve Bank "for collection and returns," with instructions from the Federal Reserve Bank to make remittance either to Kansas City or to Oklahoma City, but the draft furnished to be immediately available at the receiving office, or, in other words, if the remittance was made to Oklahoma City, the draft furnished should be upon an Oklahoma City bank having funds available for the payment thereof immediately. That was the authority of the Indianola State Bank, and it acquired that authority from the Federal Reserve Bank.

It acted as the agent of that bank under the authority given to it by that bank, made the collection, and made the remittance of the amount collected by a draft drawn on the First National Bank of Oklahoma City. When it deposited the draft in the mail, its agency ceased and thereafter the relationship between the Indianola State Bank and the Federal Reserve Bank was identical with that arising out of the purchase from the Indianola State Bank by that bank of an Oklahoma City draft, that is, the relationship of debtor and creditor.

The Federal Reserve Bank could have sent the check to the Indianola State Bank with the authority shown in the Oklahoma decisions cited, and the relationship of principal and agent would have continued until the proceeds of the collection were received by the Federal Reserve Bank. It did not do that, but, on the contrary, it, in effect, directed the Indianola State Bank to keep the proceeds collected by it on the check and to send the Federal Reserve Bank an order on an Oklahoma City bank to pay the Federal Reserve Bank money other and distinct from that collected by the Indianola State Bank on the check. Under that state of facts the relationship was that of debtor and creditor.

We are not unmindful of the fact that there are cases holding to the contrary, but we are of the opinion that, where the holder of a check directs the collection and authorizes remittance by a bank draft, upon the issuance of the draft and its delivery to the United States mail for transmission, the relationship of debtor and creditor arises and the relationship of principal and agent theretofore existing ceases.

The plaintiff says that this is the old rule and that modern authorities are to the contrary. That may or may not be true; but if so, we are not concerned. In view of the public policy established by our Constitution, we are not inclined to look for some modern theory on which to give a creditor of a failed bank a preference over the depositors of that bank in the distribution of the assets of the bank. The Federal Reserve Bank was not required to send the check to the Indianola State Bank with authority to remit by draft. When it did so and its instructions were followed out by the forwarding of the draft, it was bound by the relationship that it established and it has no greater right for payment in full than the other creditors of the failed bank.

The relationship of debtor and creditor does not arise out of the matter of remitting

the proceeds of the collection, but out of the directions of the forwarding bank to the collecting bank as to how the remittance should be made. If the directions are to remit the proceeds collected, the relationship is that of principal and agent, but, if the directions are to remit funds that are not proceeds collected but funds belonging to the collecting bank and deposited in some other bank, then it cannot be said that the relationship of principal and agent continues, and the relationship of debtor and creditor must exist when the collection has been made and the draft drawn and forwarded as shown by the record in this case.

We think that, under the facts shown by the record, the relationship of debtor and creditor existed after the money had been collected by the Indianola State Bank and the draft in accordance with the instructions given had been executed and mailed to the Federal Reserve Bank. The relationship being that of debtor and creditor, there was no trust relationship. The judgment of the trial court was erroneous, and that judgment is reversed and the cause is remanded to the district court of Oklahoma county, with directions to render judgment in favor of the defendants herein.

RILEY, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., concurs in conclusion. CLARK, V. C. J., dissents. HEFNER and CULLISON, JJ., absent.